Feliksa HYSZKO

v.

Lawrence A. BARBOUR.

Feliksa HYSZKO

v.

Lawrence A. BARBOUR, Executor.

Alice MINASIAN, Executrix of Estate
of Feliksa Hyszko

v.

Brian J. BARRY et ux.

v.

Josephine I. BARBOUR.

Nos. 79–508–Appeal, 80–121–Appeal.

Supreme Court of Rhode Island.

July 20, 1982.

S. Christopher Stowe, Jr., John F. Neary, Warwick, for plaintiffs.

Higgins, Cavanagh & Cooney, Albert R. Romano, Providence, Blais, Cunningham, Thayer, Gagnon & Ross, Ernest J. Pratt, Pawtucket, for defendants.

OPINION

KELLEHER, Justice.

We have consolidated these two appeals. One appeal concerns two suits, one of which was begun in 1958 and the other in 1961. The second appeal concerns a 1977 civil action. All the litigation took place in the Superior Court. The 1958 and 1961 suits were dismissed pursuant to Rule 41(b)(2) of the Superior Court Rules of Civil Procedure for lack of prosecution. The 1977 civil action was dismissed on the grounds of laches, a prior action pending, and the election of remedies.

In attempting to put this tangled web of litigation into its true focus, we must go back to December 15, 1958. On that day common-law pleading was in full flower, and Feliksa Hyszko (Feliksa) instituted an action in assumpsit against her son-in-law, Lawrence A. Barbour (Lawrence), who was married to Feliksa's daughter Ann. Ann had died five months earlier on July 2, 1958. In her suit Feliksa was seeking approximately $3,580 that allegedly represented a loan from Feliksa to the son-in-law so that he could build a home that was ultimately occupied by the Barbours. The home, which consisted of a "four room cape," was situated on a 5,000-square-foot lot located in Pawtucket on Baxter Street. Lawrence claimed that whatever monies were lent by Feliksa were lent to him and Ann and that they had repaid a large sum to Feliksa, who acknowledged that the payment was to be in full satisfaction of any and all prior debts.

Later, on April 29, 1959, a decree was entered in the Pawtucket Probate Court admitting Ann's will to probate and authorizing the issuance of letters testamentary to the executor, Lawrence. Feliksa then filed a claim against the estate, in which she claimed one-half interest in what had been the marital domicile and also sought $3,400, which she said represented a loan to the daughter. The claim was denied by the executor, and in June 1961 Feliksa sued the

estate in an "action of the case." In the $3,400 suit Feliksa alleged that the money represented a loan given to her daughter so that she could purchase a house. Lawrence, as the executor, once again responded by asserting that the debt for which the 1961 suit was brought was a joint debt of his and his wife's and that it had been paid.

Both actions soon became dormant in the Superior Court. The docket for the 1958 action shows a thirteen-year period of complete inactivity that extended from March 1960 to November 1973.[1] The 1961 litigation has a twelve-year span of total inactivity.

Lawrence, who had remarried, died intestate on February 1, 1973. He was survived by his widow and several brothers and sisters. Lawrence's widow, Josephine, was appointed administratrix of his estate. In the record is a decree dated May 30, 1973, in which the Pawtucket Probate Court, acting pursuant to G.L.1956 (1969 Reenactment) § 33–1–6,[2] set off to Lawrence's widow, Josephine, a fee-simple interest in the Baxter Street property.

 Feliksa's death occurred in 1975. Subsequently, on September 19, 1977, Feliksa's executrix, another daughter, after receiving permission of the Probate Court, filed a claim out of time against Lawrence's estate for $20,000, which amount allegedly represented money due the estate on an "overdue Book Account" and the value of Feliksa's one-half interest in the Baxter Street parcel. The claim was allowed by operation of law,[3] and on September 2, 1977, the executrix began a partition suit.

By that time, the property had been sold by Josephine to Brian J. Barry and his wife. The Barrys, having been made defendants in the partition suit, then issued a third-party complaint against Josephine, in which they sought monetary relief in the event the executrix prevailed.

Several efforts made by representatives of Lawrence's estate to obtain dismissal of the law actions for failure to prosecute proved fruitless until October 26, 1978. As noted earlier, the docket sheets in each case show a complete lack of action in either litigation for extended periods and also show that whatever action of note occurred in the 1970s was initiated for the most part by Lawrence's counsel in seeking a dismissal. The only positive action taken by plaintiffs occurred in February 1974, when Feliksa's then attorney moved that Josephine, as administratrix of her husband's estate, be substituted as party defendant.

As noted, the dismissal efforts finally met with success on October 26, 1978. At that time the actions were dismissed after a Superior Court justice noted that Feliksa's $20,000 claim against the estate of Lawrence had been allowed, and he also took note of the 1961 suit, in which the death of Lawrence was noted by plaintiffs as early as 1974 but in which no effort had been made to have his widow joined as a party by the filing of a complaint against her. When counsel for Feliksa's estate insisted that the responsibility for taking such action rested with defendants, the trial justice observed that there had been a "total lack

1. In early May 1964 Feliksa's then counsel filed a motion in each law action asking that both cases be assigned to the jury-trial calendar for May 20, 1964. The motions went for naught, however, because notice of the motions was sent to a Pawtucket attorney who, from the record, had no connection whatsoever with the litigation.

2. This statute allows a Probate Court to set off to the surviving spouse of an intestate who has died without issue a fee interest in the decedent's realty to an amount not exceeding $25,-000 "over and above all encumbrances" and provided that the real estate will not be needed to pay the decedent's debts. Josephine's petition for setoff was accompanied by an affidavit in which she avers that all of the estate expenses, including the funeral bills, had been paid out of her separate funds and a real estate appraisal that valued the real estate in question at $20,000.

3. Since Josephine failed to disallow the claim within the thirty-day period following its filing, the claim is considered as having been allowed. General Laws 1956 (1969 Reenactment) § 33–11–14. Failure to disallow amounts to an admission of liability, but the amount of the claim can still be disputed. *Hicks v. Wilbur*, 38 R.I. 268, 94 A. 872 (1915).

of prosecution in these matters" and dismissed both the 1958 and 1961 suits. Josephine's actual knowledge of the pending litigation was first revealed by an entry of appearance on her behalf in May 1978 and by the filing of the final motions to dismiss, which she initiated in her capacity as administratrix of Lawrence's estate.

■ Abuse of discretion is the applicable standard to be used by us when reviewing a trial justice's dismissal of a civil action for lack of prosecution pursuant to Super.R. Civ.P. 41(b)(2). *Manton Industries, Inc. v. Providence Washington Indemnity Co.*, 113 R.I. 198, 200, 319 A.2d 355, 357 (1974). Counsel now representing Feliksa's estate, in seeking to overturn the trial justice's dismissal, emphasize the ongoing activity that occurred in Superior Court during the late 1970s. This "present prosecution" factor, they claim, should erase the egregious period of delay demonstrated by the record. The present-prosecution element was relied on by the court in *United States v. Myers*, 38 F.R.D. 194, 197 (N.D.Cal.1964), in rejecting a Rule 41(b)(2) dismissal motion. Assuming the requisite prosecutorial diligence was exhibited in behalf of Feliksa's estate in 1978, there were other factors to be considered.

■ The primary responsibility for moving a case on for trial rests with the plaintiff and his or her attorneys, not the defendants or the trial court. *Ely Valley Mines, Inc. v. Hartford Accident and Indemnity Co.*, 644 F.2d 1310, 1317 (9th Cir. 1981). The trial justice, in considering the 1978 motion to dismiss, was required to weigh conflicting interests. On the one hand is the court's need to manage its docket, the public interest in the expeditious resolution of litigation, and the risk of prejudice to the defendants from delay. On the other hand, there is the desire to dispose of cases on their merits. *See Citizens Utilities Co. v. American Telephone & Telegraph Co.*, 595 F.2d 1171, 1174 (9th Cir. 1979).

■ Applying these policies to the facts involved, it is obvious that when the cases came on before the trial justice in the fall of 1978, Lawrence was dead and so was his mother-in-law. The Probate Court had entered a decree declaring Lawrence's estate to be insolvent, and Ann's estate was, for all practical purposes, in the same fiscal condition. Consequently, there were no assets that would satisfy any judgments that might have been entered. Banking records, as well as other documents that might be indicative of what Lawrence and Ann did by way of repaying Feliksa's loan, were either lost or destroyed. The record almost speaks for itself, and we find no abuse of the trial justice's discretion when in the late 1970s he granted Josephine's motion to dismiss the two common-law actions, one of 1958 vintage and the other a 1961 product.

The basis for the 1977 partition suit was Ann's will, which was executed on June 7, 1958, and admitted to probate the following April. In the will's third clause, Ann acknowledged that even though her real estate was jointly owned with her husband, she and Lawrence had agreed that her half-share of the real estate "shall go to my mother" because the couple was indebted to her mother for "money she has advanced to us in order to build our home." Following the testimonium clause and the witnesses' signatures, there is a statement in which Lawrence relates that the terms of the will have been explained to him and he is "in full accord and agreement with the terms thereof * * *." Lawrence's signature then follows. Below the signature is an acknowledgment clause drafted by the will's scrivener, acting as a notary public. The notary reports that Lawrence, while under oath, acknowledged that his agreeing to the disposition called for in the will was completely voluntary.

Feliksa's executrix, through her attorneys, takes the position that the 1958 instrument severed the joint tenancy, and as authority for her severance theory she relies upon the sentiments expressed by the majority in *Lancellotti v. Lancellotti*, 119 R.I. 184, 377 A.2d 1315 (1977).

A second Superior Court justice, in dismissing the suit, never reached the severance question. Instead he referred to the

1958 and 1961 suits and ruled that the executrix could not prevail because of the delay in bringing suit, invoking such doctrines as laches, election of remedies, and a prior action pending.

■ We go no further than the laches doctrine. We have recognized that the mere lapse of time does not constitute laches. However, when unexplained and inexcusable delay have the effect of visiting prejudice on the other party, that defense may be successfully invoked. *Gaglione v. Cardi*, 120 R.I. 534, 540, 388 A.2d 361, 364 (1978); *Pukas v. Pukas*, 104 R.I. 542, 545–46, 247 A.2d 427, 429 (1968); *Cavanagh v. Bostitch, Inc.*, 91 R.I. 239, 253, 162 A.2d 785, 792 (1960). This principle was best stated before the turn of the century in *Chase v. Chase*, 20 R.I. 202, 203–04, 37 A. 804, 805 (1897):

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

Much of what we have said earlier in this opinion bears repetition as we consider the executrix's claim that Ann's will severed the joint tenancy. A lot of time has marched on and a lot of changes have taken place during the almost twenty years that have elapsed between December 17, 1958, the day when Feliksa first sued her son-in-law for money allegedly owed her, and September 2, 1977, the day when Feliksa's daughter, Alice Minasian, acting as her mother's executrix, sued the Barrys and asked that the Barrys' residence be sold. Lawrence, whose previous actions belied the existence of any agreement to sever, cannot testify; Feliksa cannot be cross-examined; and the Barrys are now confronted with the threat of being forced to vacate their home and go out into the money market to seek financing at a time when a mortgage bearing a single-digit percentage rate appears to be a revered relic of an era long gone. At no time during the fourteen-year period following Lawrence's rejection of his mother-in-law's half-interest claim did Feliksa ever seek to invoke the Superior Court's equity jurisdiction.

■ The executrix, in seeking to excuse her mother's delay, argues that because of the terms of § 33–6–31 the Barrys were charged with notice of the precarious status of their real estate title. In espousing this position, Feliksa's executrix refers us to *Estate of Wickes v. Stein*, 107 R.I. 260, 269, 266 A.2d 911, 916 (1970), where, in a footnote to a dispute between the executor and the assessor relative to municipal taxes assessed against the testator's art collection, this court described § 33–6–31 as a "recording statute." In its pertinent portions the statute provides that title to real or personal property shall "pass" by will when the will has been "finally proved," but when the real estate is situated in a city or town other than that in which the will was probated, title will not pass until such time as a duly certified copy of the will has been recorded in the land evidence records of the "other" municipality. In classifying § 33–6–31 as a recording statute, the court's focus in the *Stein* case was on that portion of the statute requiring recording before title could "pass." Since the statute provides for passage of title without recording where the real estate and the probate court are within the same municipality, the Barrys may not be charged with constructive notice of Feliksa's belated severance claim.

■ The only issue before the Pawtucket Probate Court in April of 1959 when Ann's will was offered for probate was whether the evidence adduced indicated

that (1) the signature purporting to be Ann's was Ann's, (2) Ann was an adult at the time the will was executed, (3) she signed the will or acknowledged the signature appearing thereon to be hers in the presence of two witnesses, (4) the witnesses added their signatures in the presence of Ann and each other, and (5) Ann possessed the requisite testamentary capacity at the time the will was executed. The portion of the document which contains Lawrence's agreement and the notary public's report, as far as the Probate Court was concerned, was pure surplusage.[4] The question of whether there was an effective severance of Ann and Lawrence's joint tenancy was an issue that could not be resolved in the Probate Court. The appropriate forum was the Superior Court. Although G.L.1956 (1969 Reenactment) § 8-9-9 empowers the Probate Court of each municipality to partition real estate of deceased persons, this power is by the terms of § 33-3-1 limited to instances in which the deceased has died intestate, the "debts, charges, and expenses of settling the estate" have been paid, and a written application for partition has been submitted to the Probate Court.

Try as she might, Feliksa's executrix has failed to convince us that the trial justice, in dismissing the partition suit on the ground of laches, erred.

Accordingly, the appeals taken on behalf of Feliksa's estate are denied and dismissed, the judgments appealed from in each case are affirmed, and the records in each case are remanded to the Superior Court.

---

4. Interestingly enough, it would appear that the *sentiments expressed above might have been* shared by the Probate Court when, in admitting Ann's will to probate, the decree specifically provided that the instrument being admitted to probate was

"1. * * * the writing appearing on two and one-quarter (2¼) pages and ending with the

signatures of the two witnesses appearing *immediately under the testimonium clause.* "2. The two paragraphs which appear as an addition to said will after the testimonium clause, not being the act of the testator, are hereby declared not to be a part of said will * * *."