### Shirley BERGERON

### v.

### Joseph J. ROSZKOWSKI et al.

### No. 2003–26–Appeal.

Supreme Court of Rhode Island.

Feb. 7, 2005.

Robert D. Watt, Providence, for Plaintiff.

Lawrence P. McCarthy, Providence, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiff, Shirley Bergeron, appeals from a judgment dismissing her legal malpractice action with prejudice under Rule 41(b) of the Superior Court Rules of Civil Procedure for her failure to prosecute. The plaintiff argues that the Superior Court erred in denying her request for a continuance based on her own medical condition and on the medical condition of her expert witness. In addition, the plaintiff contends that the Superior Court erred in dismissing her action.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised on appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda that the parties filed, we are of the opinion that cause has not been shown, and we affirm the judgment entered in the Superior Court.

## Facts and Travel

The allegations underlying this action arise from a personal injury lawsuit plaintiff filed as the result of a motor vehicle accident in July 1987. The plaintiff asserts that two of her attorneys in that lawsuit, defendants Joseph J. Roszkowski and Armand A. Teixeira, committed legal malpractice by, among other things, not informing her that the case had been scheduled for trial. Because of plaintiff's failure to appear for trial, the personal injury lawsuit was dismissed on April 4, 1994, for lack of prosecution. The plaintiff maintains that she did not find out about the dismissal until October 1, 1998. The defendants counter that plaintiff moved to Florida while the suit was pending, failed to keep in touch with her attorneys, and that they made numerous efforts to locate her and obtain her attendance at trial.

In the legal malpractice action now before us, trial was scheduled for the week of July 8, 2002; it was not, however, scheduled for a "date certain" at that time. In July, a justice of the Superior Court continued the case to a trial date certain for September 23, 2002. Approximately ten days before this trial date, plaintiff filed a motion for a continuance, supported by the following reasons. First, plaintiff averred that she had been diagnosed with a form of skin cancer, and although in a "stable" condition, she had not been able to consult with her attorney to prepare for trial. Further, she "had not been given clearance" by her physicians to travel from her residence in Florida to Rhode Island. Second, plaintiff's expert witness, John

McBurney, had become ill and was unavailable to testify at trial. Third, plaintiff alleged that she previously had been financially unable to conduct a second deposition of defendants, but was now able to do so. Finally, she alleged that there was "a strong belief that [her former husband]," who was "an indispensable part of this case," had been " 'paid off' on behalf of the defendants" and was intentionally avoiding plaintiff's efforts to contact him.

On Thursday, September 19, 2002, a hearing on the motion for a continuance was held before an assignment justice. During this hearing, defendants' counsel said that they previously had not been informed about medical problems concerning the expert witness, but that they had been advised that another expert, Robert Watt, would be substituted for Mr. McBurney and that plaintiff would update her interrogatory answers. In addition, defendants' attorneys pointed out that plaintiff had not submitted any medical affidavits, as required by Rule 40 of the Superior Court Rules of Civil Procedure, demonstrating plaintiff's inability to travel to Rhode Island because of her medical condition and supporting Mr. McBurney's illness. The plaintiff's counsel agreed to the assignment justice's instruction to submit a medical affidavit showing that Mr. McBurney's medical condition prevented him from testifying. The assignment justice denied plaintiff's request for a continuance. However, he allowed plaintiff to substitute Mr. Watt as an expert witness subject to the following conditions: plaintiff was required to submit a medical affidavit/certificate, satisfactory to the trial justice, stating that Mr. McBurney was unable to attend the trial; plaintiff was required to supplement her answers to defendants' expert witness interrogatories; and plaintiff was required to produce Mr. Watt for a deposition on Saturday, September 21, 2002. At the conclusion of the

hearing, plaintiff's attorney asked whether the case would be reached for trial on the following Monday because plaintiff "may be forced to drive up [from Florida] rather than fly." Whereupon, defendants' counsel expressed his surprise that "plaintiff has now recovered and is able to drive" to Rhode Island.

The next day, Friday, September 20, 2002, plaintiff filed with this Court a petition for writ of certiorari and a motion to stay the trial proceedings. That same day, a duty judge of this Court, upon reviewing plaintiff's submissions, denied her motion for a stay of the trial and said that the petition for certiorari would be considered "in due course following the filing of appropriate memoranda." The defendants' counsel received notice of this order by facsimile transmission on the same day. The plaintiff's attorney, however, had not provided the Supreme Court clerk's office with either a telephone or facsimile number where he could be reached, and therefore did not learn about the order denying the stay until the following Monday in open court.

On that day, September 23, when the case was reached before the trial justice to whom it had been assigned, plaintiff again made a motion to continue the matter. The plaintiff's counsel argued that he had been informed by the Supreme Court clerk's office that, because of a judicial conference, the motion to stay would not be taken up until Monday (September 23). He decided, therefore, "not to notify my medically stricken plaintiff and run the risk of increasing her failing health" by making her travel from Florida to Rhode Island. Although plaintiff's counsel had not communicated with the plaintiff directly, he said that he had informed her mother that plaintiff may have to appear in court on the morning of September 24. The plaintiff's counsel also represented to

the court that he learned that Mr. Watt was unavailable for a deposition on the weekend. Instead, he had made an appointment with him for Monday, September 23, at 4 p.m.

The plaintiff's counsel acknowledged that he had not yet obtained any medical affidavit for either plaintiff or the former expert witness, although he said that he had told plaintiff to "bring medical information" when she comes to court and that he would obtain a medical affidavit for Mr. McBurney "[i]f I get a moment's opportunity." The plaintiff's counsel noted, however, that he had submitted supplemental answers to the expert witness interrogatories.[1]

The trial justice, after reviewing the procedural history of the case in some detail, ruled that the motion for the continuance was not properly before the court because it already had been denied by the assignment justice. Moreover, even assuming that the request for a continuance was properly presented, the trial justice denied it for plaintiff's failure to submit proper medical affidavits concerning the medical condition of either plaintiff or Mr. McBurney. The trial justice also said that plaintiff had not provided any information indicating that Mr. Watt had, in fact, been retained and what opinions would be available from him for trial purposes.

After refusing to disturb the assignment justice's denial of a continuance, the trial justice asked plaintiff's attorney whether he was ready to proceed with the trial. The plaintiff's counsel responded that he was ready to go forward by impaneling a jury. The plaintiff's counsel conceded that the case would be dismissed if plaintiff did not appear the next day. The trial justice

requested assurances from plaintiff's counsel that plaintiff would be there the next day and asked whether Mr. Watt would be ready. The trial justice then decided to place telephone calls to plaintiff and Mr. Watt. After dialing plaintiff's telephone number, the trial justice spoke with an individual who identified her/himself as plaintiff's roommate. The person said that plaintiff currently was not home and was expected back in a couple of hours; the person then hung up the telephone. The trial justice also spoke to Mr. Watt, who said that he had not yet been retained and was not ready to testify. Mr. Watt said that he was scheduled to meet with plaintiff at 4 p.m. that afternoon to review the case and that plaintiff's counsel had represented to him that the trial would be continued until October or November 2002. After this conversation, the trial justice said, "[i]t is clear to me [plaintiff does not] have an expert."

The defendants' counsel then asked the court to dismiss plaintiff's case pursuant to Rule 41. The trial justice, in addition to stating that plaintiff was not ready for trial, expressed concern that plaintiff's counsel had not been candid toward the court. Further, the trial justice recognized that plaintiff's counsel had not taken the steps required by the assignment justice's order preceding the trial date. The trial justice opined that because of the lack of an expert witness, plaintiff would be unable to prove her case and, therefore, it would be an exercise in futility to subject counsel, the parties, and jurors to a trial. Consequently, the trial justice dismissed the case with prejudice.

An order, specifying that the case was dismissed involuntarily pursuant to Rule

---

1. The supplemental answers to the expert witness interrogatories, however, were not signed by the plaintiff, nor were they notarized. The defendants' counsel remarked that they provided no more than a signed statement by plaintiff's counsel and contained no facts that would serve as the basis for the expert's testimony.

41(b) for plaintiff's failure to appear and prosecute her complaint, and a final judgment were entered on September 24, 2002, from which plaintiff timely appealed.

On appeal, in a rather spare "preliminary docketing statement," plaintiff argues that the "Superior Court justices [erred] as a matter of law and as a matter of discretion in refusing the requested continuances * * * and in dismissing the case without a trial." Her legal argument must be gleaned largely from a few case citations. The plaintiff apparently avers that the Superior Court should have granted a continuance even without submission of medical affidavits. *See Maker v. Ferguson,* 105 R.I. 306, 251 A.2d 535 (1969).

The defendants maintain, on the other hand, that the assignment justice did not abuse his discretion in denying plaintiff's request for a continuance, and, consequently, that the trial justice correctly dismissed the case with prejudice. The defendants point out that plaintiff did not submit a medical certificate as required by Rule 40 to support her contention that she was unable to proceed with the trial because of her medical condition. Accordingly, they contend that the assignment justice was correct to deny the continuance. Furthermore, defendants argue that the dismissal of the case was warranted because plaintiff had not retained an expert witness to testify at the trial and thus was unable to prove a *prima facie* case of legal malpractice.

## Discussion

### Denial of Motion for Continuance

■ "A trial justice is vested with great authority in managing his or her trial calendar. '[T]he management of a trial calendar is among the most difficult of all judicial assignments. * * * Consequently[,] the widest discretion must be given to calendar justices and trial justices

in carrying out this enormously difficult function * * *.'" *Mills v. State Sales, Inc.,* 824 A.2d 461, 469 (R.I.2003) (quoting *Boucher v. Galvin,* 571 A.2d 35, 37 (R.I. 1990)). "This Court will not disturb a trial justice's decision to grant or deny a request for a continuance absent an abuse of discretion." *Id.*

The requirements for requesting a continuance because of illness are set forth in Rule 40(c), which provides in pertinent part:

"A motion for a continuance on the ground of sickness of a party or witness shall be accompanied by a certificate of a practicing physician stating the fact of said sickness, and the kind, degree, and the time of beginning thereof. Such motion may be denied if the moving party shall not have notified the adverse party as soon as practicable of the illness and forthcoming motion for a continuance."

Rule 40(c) also provides that

"[t]he court need not entertain any motion for a continuance based on the absence of a material witness unless such motion be supported by an affidavit which shall state the name of the witness and, if known, the witness' address, the facts to which the witness is expected to testify and the basis for such expectation, the efforts which have been made to procure the witness' attendance or deposition, and the expectation which the party has of procuring the witness' testimony or deposition at a future time."

In *Maker,* 105 R.I. at 307, 251 A.2d at 535, this Court upheld the trial justice's grant of a continuance on the basis of the plaintiff's illness, despite the lack of a medical certificate. The Court stated, however, that this "noncompliance in and of itself would have justified the trial justice in

denying the request for a continuance * * *." *Id.* In *Perry v. Garey,* 799 A.2d 1018, 1021, 1024 (R.I.2002), for example, this Court affirmed the denial of a continuance requested by the defendant when he failed to provide an affidavit confirming his wife's serious illness.

In *Mills,* 824 A.2d at 469, this Court affirmed a hearing justice's refusal to grant a continuance on the basis that the justice took "proactive steps to alleviate some of the burden placed on plaintiff because of [her attorney's] * * * withdrawal." The hearing justice, for example, relaxed some deadlines to allow plaintiff to retain new expert witnesses. *Id.* Accordingly, the denial of a continuance "did not present an insurmountable barrier to the success of plaintiff's case." *Id.*

 In the present case, the assignment justice, in a similar fashion, denied the motion for the continuance, but at the same time allowed plaintiff an additional four days to procure a medical affidavit for the expert witness. If plaintiff obtained this affidavit, he allowed her to substitute a new expert witness who could be deposed over the weekend. As in *Mills,* therefore, the denial of the continuance did not present an insurmountable bar to plaintiff's success in the case. Moreover, plaintiff did not submit the required medical certificates for either herself or her original expert witness. In addition, statements by plaintiff's counsel appeared to contradict his previous assertions that plaintiff was not physically able to travel to Rhode Island. Consequently, we are of the opinion that the assignment justice did not abuse his discretion when he denied plaintiff's motion for a continuance.

 Furthermore, the trial justice was correct to refrain from deciding plaintiff's renewed motion for a continuance. "[O]nce 'a judge has decided an interlocutory matter in a pending suit, a second

judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.' " *Perry,* 799 A.2d at 1024 (quoting *Paolella v. Radiologic Leasing Associates,* 769 A.2d 596, 599 (R.I.2001)). Once the scheduling justice had denied the continuance, it became the law of the case, and the trial justice was correct not to disturb that ruling. *Perry,* 799 A.2d at 1024–25.

## Dismissal Under Rule 41

 On September 23, 2002, the trial justice dismissed plaintiff's case with prejudice under Rule 41(b) for plaintiff's failure to prosecute her complaint.

 "Abuse of discretion is the applicable standard to be used by [this Court] when reviewing a trial justice's dismissal of a civil action for lack of prosecution pursuant to Super.R.Civ.P. 41(b)(2)." *Harvey v. Town of Tiverton,* 764 A.2d 141, 143 (R.I.2001) (quoting *Hyszko v. Barbour,* 448 A.2d 723, 726 (R.I.1982)). "In reviewing a trial justice's ruling on a motion to dismiss pursuant to Super.R.Civ.P. 41(b)(2), this [C]ourt determines 'whether [her] findings are supported by the evidence or whether in making such findings [she] misconceived or overlooked any material evidence.' " *Harvey,* 764 A.2d at 143 (quoting *Finney Outdoor Advertising Co. v. Cordeiro,* 485 A.2d 910, 911 (R.I.1984)).

Rule 41(b) provides in part that "(1) [t]he court may, in its discretion, dismiss any action for lack of prosecution * * * for failure of the plaintiff to comply with these rules or to proceed when the action is reached for trial," and "(2) [o]n motion of the defendant the court may, in its discretion, dismiss any action for failure of the plaintiff to comply with these rules or any order of court or for lack of prosecution as

provided in paragraph (1) of this subdivision."

■ "The primary responsibility for moving a case on for trial rests with the plaintiff and his or her attorneys, not the defendant or the trial court." *Hyszko,* 448 A.2d at 726 (citing *Ely Valley Mines, Inc. v. Hartford Accident and Indemnity Co.,* 644 F.2d 1310, 1317 (9th Cir.1981)). "Mere delay[, however,] is not enough to warrant dismissal for lack of prosecution." *Harvey,* 764 A.2d at 143 (citing *Scittarelli v. Providence Gas Co.,* 415 A.2d 1040, 1042 n. 1 (R.I.1980)). "Although the trial court must weigh the equities between the parties, * * * it need not view the evidence in a light most favorable to the plaintiffs." *Id.* (citing *J.K. Social Club v. J.K. Realty Corp.,* 448 A.2d 130, 133 (R.I.1982)). "In considering a motion to dismiss for failure to prosecute, the court is 'required to weigh conflicting interests. On the one hand is the court's need to manage its docket, the public interest in the expeditious resolution of litigation, and the risk of prejudice to the defendants from delay. On the other hand, there is the desire to dispose of cases on their merits.' " *Id.* (quoting *Hyszko,* 448 A.2d at 726).

■ In the present case, we conclude that the trial justice did not abuse her discretion when she dismissed the case for the plaintiff's failure to prosecute. Even after the scheduling justice allowed the plaintiff to substitute an expert witness at the eleventh hour, the plaintiff failed to satisfy the conditions set forth in the court's order. More significantly, after personally contacting Mr. Watt, the purported new expert witness, the trial justice determined that the plaintiff had, in fact, not engaged an expert witness who was available to testify, and thus was unable to prove her case. "[T]o prevail on a legal malpractice claim, 'a plaintiff must prove by a fair preponderance of the evidence not only a defendant's duty of care, but also a breach thereof and the damages actually or proximately resulting therefrom to the plaintiff.' " *Ahmed v. Pannone,* 779 A.2d 630, 632–33 (R.I.2001) (quoting *Macera Brothers of Cranston, Inc. v. Gelfuso & Lachut, Inc.,* 740 A.2d 1262, 1264 (R.I.1999)). The plaintiff's attorney conceded that he would be unable to prove the case without an expert witness. We are, therefore, of the opinion that in dismissing the plaintiff's complaint the trial justice did not abuse her discretion.

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed and the papers in the case are remanded to the Superior Court.