April 17, 2025

**Supreme Court**

No. 2023-44-Appeal.
(PB 11-5398)

Deutsche Bank National Trust      :
Company, as Trustee for the Registered
Holders of CBA Commercial Assets,
Small Balance Commercial Mortgage
Pass-Through Certificates, Series
2006-1

v.      :

Alebia, Inc.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Deutsche Bank National Trust   :
Company, as Trustee for the Registered
Holders of CBA Commercial Assets,
Small Balance Commercial Mortgage
Pass-Through Certificates, Series
2006-1

v.            :

Alebia, Inc.         :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Alebia, Inc. (Alebia or defendant), appeals from the Superior Court's entry of a partial judgment in favor of the plaintiff, Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1 (Deutsche Bank or plaintiff), in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure. The judgment reforms a mortgage that is at the center of this dispute. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that

- 1 -

cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Alebia is a Rhode Island corporation with its principal place of business located at 284-286 Atwells Avenue, Providence (the property). Alebia was the record owner of the property at the time of the execution of the mortgage in dispute. Carmela Natale and Walter Potenza are purportedly the only owners and shareholders of Alebia. Deutsche Bank is a national trust company.

In September 2005, Natale and Potenza executed a promissory note (the note) and mortgage in favor of Equity One Mortgage Company (Equity One). The mortgage lacked a legal description of the property to be used as collateral for the note; the loan proceeds, however, were used to pay off and discharge prior mortgages encumbering the property, as well as the City of Providence taxes due on the property. The remaining proceeds of the loan were paid to Natale and Potenza. The plaintiff is the current holder of the note. According to plaintiff, all parties to the transaction intended both for the note to be secured by the property and for the mortgage to be executed by Natale and Potenza as authorized officers of Alebia.

- 2 -

Instead, however, Natale and Potenza signed the mortgage in their individual capacities.

Despite this, in 2007, Natale and Potenza executed a loan modification agreement with plaintiff, acknowledging that the note was secured by the property. Additionally, several other documents–including the homeowner insurance verification and authorization, truth-in-lending disclosure, numerous documents related to the refinancing request, and affidavit of title–all referred to Natale and Potenza as the borrowers and the property as the collateral to which the security interest was attached.

On September 19, 2011, plaintiff filed a complaint in Providence County Superior Court against Natale and Potenza asserting breach-of-contract claims and seeking damages in the amount equal to the payment remaining under the note, property taxes, attorneys' fees, expenses, and interest. On the same day, plaintiff also filed a complaint against Alebia seeking reformation of the mortgage, the imposition of an equitable mortgage, a declaratory judgment declaring the mortgage reformed, and damages. Eventually, on April 10, 2017, plaintiff obtained a judgment against Natale and Potenza for their remaining obligations under the loan. But because Natale and Potenza had executed the note in their individual capacities and not on behalf of Alebia, plaintiff was unable to proceed against the property as collateral for the debt. Accordingly, on June 18, 2021, plaintiff filed a motion to

equitably reform the mortgage in its case against Alebia and requested an evidentiary hearing. The defendant objected.

A justice of the Superior Court presided over three remote evidentiary hearings between September 2021 and February 2022. At the first hearing, on September 17, 2021, defendant objected to holding the hearings remotely. The defendant argued that because the hearing justice was making an ultimate decision on the merits of the litigation, the hearings constituted a bench trial and that, under an executive order issued by the Supreme Court during the pandemic, all bench trials were to be held in court unless all parties agreed to hold them remotely. The hearing justice denied defendant's objection, however, and the hearings proceeded remotely.

Over the course of the hearings, four witnesses testified, *viz.*: Howard Handville, a senior loan analyst for Ocwen Financial Corporation (Ocwen); Karen Medeiros, Esq., a former closing attorney for Residential Title and Escrow Services, Inc.; Leonard Accardo, Jr., Esq., who testified as an expert witness in commercial real estate transactions; and Danielle Smith, the managing paralegal and firm administrator for Savage Law Partners (SLP), the law firm representing the plaintiff in this action. We recite only the testimony necessary to decide the issues before us.

Mr. Handville was, at the time, a senior loan analyst at Ocwen. He testified that since the loan originated in 2005, the loan has been serviced by several different loan servicing companies, the most recent of which was PHH Mortgage (PHH) in

2019. Following a merger between PHH and Ocwen in 2019, PHH became a subsidiary of Ocwen. Handville further testified that he had reviewed the files of PHH related to the mortgage more than half a dozen times and that those files were maintained by Ocwen in the normal course of business. Handville testified that "[t]here was no question the loan was secured by an asset, [the] real estate asset."

Ms. Smith was the managing paralegal at Shechtman, Halperin & Savage (SHS) and then at SLP, attorneys for plaintiff and the entities that kept physical possession of the original note. Smith testified that the note was received by SHS and then transferred to SLP. She further testified that the note was kept and maintained in the ordinary course of business since its initial arrival and that she had been responsible for overseeing the safekeeping and transportation of the note and the attached documents between the two firms. Smith was asked to compare the photocopy of the note offered as an exhibit with the original note she had on file in her office. In her comparison, the only differences she noted were initials on the lower corner of the original note.

The hearing justice thereafter issued a written decision granting the motion to equitably reform the mortgage, thereby reforming the mortgage to have been executed by Natale and Potenza in their capacities as corporate representatives of Alebia instead of in their individual capacities. A partial final judgment was entered

- 5 -

pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure on July 19, 2022. The defendant filed a timely notice of appeal on July 20, 2022.

## II

### Standard of Review

This Court has held that "[t]he admissibility of evidence is within the sound discretion of the trial justice." *Estrella v. Janney Montgomery Scott LLC*, 296 A.3d 97, 103 (R.I. 2023) (quoting *Cappuccilli v. Carcieri*, 174 A.3d 722, 729 (R.I. 2017)). "This Court will not interfere with the trial justice's [evidentiary] decision unless a clear abuse of that discretion is apparent." *Id*. (quoting *Cappuccilli*, 174 A.3d at 729).

Additionally, "[i]t is well-established that the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Luis v. Gaugler*, 185 A.3d 497, 502 (R.I. 2018) (quoting *Fravala v. City of Cranston ex rel. Baron*, 996 A.2d 696, 704 (R.I. 2010)). "A trial justice's findings on questions of law, however, are reviewed *de novo*." *Estrella*, 296 A.3d at 106 (quoting *Town Houses at Bonnet Shores Condominium Association v. Langlois*, 45 A.3d 577, 581 (R.I. 2012)).

# III

## Discussion

On appeal, defendant asserts five errors that, it argues, warrant reversal of the Rule 54(b) judgment, two of which focus on the admission of evidence. First, defendant argues that the hearing justice erred in admitting the testimony of senior loan analyst Howard Handville into evidence. In support of its claim of error, defendant argues that Handville's testimony lacked the required foundation and that the hearing justice incorrectly applied the business records exception to the hearsay rule. Second, defendant contends that the hearing justice erred in admitting a photocopy of the note into evidence because the note was improperly authenticated. Further to this point, defendant argues that it did not have the opportunity to inspect the original note and that the hearing justice improperly denied defendant's request to call a new expert witness to inspect the note.

Next, defendant raises an issue regarding the hearing justice's evaluation of the weight of the evidence. The defendant contends that there was not sufficient evidence presented at the hearings to determine the intent of the original lender at the time the mortgage was signed, and, thus, the hearing justice erred in reforming the mortgage under the doctrine of mutual mistake.

The defendant also raises two issues that implicate the hearing justice's interpretation of law. First, it asserts that the hearing justice erred in reforming the

mortgage without also reforming the note and that failure to also reform the note renders the note void. Finally, defendant claims that the hearing justice erred by refusing to conduct an in-person hearing and that defendant was thereby denied its right to due process.

We initially observe that, notwithstanding defendant's claims of error on appeal, it advanced only one argument in its post-hearing memorandum below, *viz.*: "[F]or the reformation to be effective, the note must also be reformed so that the mortgagor Alebia, Inc. is also a borrower under the note." To the extent that the remainder of defendant's appellate arguments have not been waived, they are without merit.

The defendant assigns two errors to the admission of the promissory note allegedly signed by Natale and Potenza. First, it argues that the only persons who testified concerning the note were Handville, an Ocwen loan analyst, and Smith, an employee of the law firm representing plaintiff, and that these two witnesses did not provide the foundation necessary to admit the note through their testimony. Specifically, defendant asserts that Handville knew nothing about the transfer of the note or mortgage prior to the involvement of PHH and, therefore, could not himself verify the accuracy of any records of prior mortgage servicers. To this point, defendant argues that none of Handville's testimony should be considered for want of a proper foundation. As a result, defendant argues, the hearing justice erred "by

admitting into evidence what was claimed to be a note with an allonge * * * despite the lack of any foundation * * *." Second, and related to its first argument, defendant argues that Smith also "did not authenticate the note." In further support of this argument, defendant claims that it was denied the opportunity to inspect the note and to have an expert inspect the note.

The abuse-of-discretion "standard is applicable to a trial justice's determinations with respect to both the relevancy of proffered evidence and the adequacy of the foundation laid for its admission." *Malinowski v. United Parcel Service, Inc.*, 792 A.2d 50, 53 (R.I. 2002) (quoting *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 314 (R.I. 2001)).

### Testimony of Howard Handville

We first address the threshold matter of whether the trial justice erred in admitting the testimony of Handville. Here, the loan at issue originated in 2005 and has since been serviced by several different loan servicing companies, most recently by PHH in 2019. PHH then became a subsidiary of Ocwen. Handville was a senior loan analyst at Ocwen. At the hearings, he testified that he had reviewed the files of PHH and Ocwen related to the mortgage numerous times and that those files were maintained in the course of business. In addition, Handville was subject to, and indeed underwent, a robust cross-examination. As such, we perceive no abuse of

discretion by the hearing justice in admitting Handville's testimony and then assigning to it whatever weight he deemed appropriate.

**The Promissory Note**

Having deemed Handville's testimony properly admitted, we next address the admission of the promissory note. On appeal, defendant's argument that the hearing justice erred in admitting the note into evidence for lack of authentication is twofold. First, defendant argues that the photocopy of the note admitted into evidence was not properly authenticated by Smith. In support, defendant claims that Smith's testimony about the chain of custody of the note did not clearly establish that the note in her office was the original note. Second, defendant claims it was denied the opportunity to inspect and authenticate the note itself and was also denied the opportunity to call a new expert witness to testify about the lack of authenticity of the note. Both of these errors, defendant claims, were a denial of its right to due process.

Rule 901(a) of the Rhode Island Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This Court has stated that "authentication is not a high hurdle to clear." *O'Connor v. Newport Hospital*, 111 A.3d 317, 323 (R.I. 2015) (brackets omitted) (quoting *McGovern v. Bank of America, N.A.*, 91 A.3d

853, 860 (R.I. 2014)). Furthermore, "document authenticity need not be established by any particular means but may be accomplished by any of the methods enumerated in Rules 901 or 902." *Id.* (brackets and deletion omitted) (quoting *State v. Oliveira*, 774 A.2d 893, 925 (R.I. 2001)).

Of these, one such method is establishing a chain of custody for the evidence. *See* R.I. R. Evid. 901(b) Advisory Committee's Notes (2024). "Although a showing of a continuous chain of custody may operate as a 'guarantee of the reliability,' such a showing is *not* necessary for the introduction of physical evidence." *State v. Nelson*, 982 A.2d 602, 612 (R.I. 2009) (emphasis added) (quoting *State v. Infantolino*, 116 R.I. 303, 312, 355 A.2d 722, 727 (1976)). "Thus, a showing of continuous chain of custody is relevant only to the weight of the evidence, *not to its admissibility.*" *State v. Cohen*, 538 A.2d 151, 154 (R.I. 1988).

A review of the transcripts of the hearings reveals the following: The plaintiff first attempted to admit a document entitled "adjustable rate note" through the testimony of Handville. He was asked to testify about the records of the mortgage transaction at issue, which were being maintained by PHH. Handville testified that it was common practice for a loan servicer to rely on the accuracy and reliability of business records that are transmitted from a prior servicer. Specifically with respect to the note, he testified that the note memorialized a loan in the amount of $883,750, in which Equity One was the lender and Natale and Potenza were the borrowers.

- 11 -

Handville stated that the original note was maintained at plaintiff's law firm's office. The plaintiff then moved for full admission of the note, and defendant objected for lack of foundation. The hearing justice indicated that he was "going to reserve on a full exhibit until after cross, and if counsel wishes to[,] after redirect." Handville completed his testimony the following day, including cross, redirect, and recross examination.

The next witness to testify was Karen Medeiros, an attorney formerly employed by Residential Title and Escrow Services, Inc.[1] She served as the closing attorney representing the interests of Equity One at the transaction at issue in this case. She was also asked to identify the promissory note. Although the loan closing had occurred over fifteen years earlier, she testified that she recalled Natale and Potenza signing the document in front of her. The plaintiff again moved to enter the note as a full exhibit, and defendant again objected. The hearing justice thereupon admitted the promissory note as a full exhibit, recognizing that there might be further testimony on the note and indicating that he could decide what weight it should be afforded.

At the third and final evidentiary hearing on the issue, plaintiff called Smith to establish a chain of custody for the note. Smith testified that the note was received

---

[1] In its papers, defendant does not address the effect of Medeiros's testimony on the admission of the note.

by the first law firm at which she worked and then transferred to the second law firm at which she worked. She further testified that the note was kept and maintained in the ordinary course of business since its initial arrival and that she had been responsible for the safekeeping and transportation of the note and the attached documents between the two firms. When Smith compared the photocopy of the note offered as an exhibit with the original note she had on file in her office, the only differences she noted were initials on the lower corner of the original note.

In addition to this testimony, and in response to objections by defendant as to the note's authenticity at the hearing, plaintiff offered to make the original note available in chambers, impliedly so that the hearing justice and defendant could schedule a time to inspect the note themselves. Apparently, for reasons unclear in the transcript, this never occurred. Given the low hurdle required to authenticate a piece of evidence, the testimony offered at the hearings to establish a chain of custody for the note, and this Court's recognition that chain of custody goes to the weight of the evidence and not its admissibility, we cannot say that the hearing justice abused his discretion in admitting the photocopy of the note.

When considering defendant's claim regarding the introduction of new expert testimony, we note that this Court has held that "'[t]he widest discretion must be given to calendar justices and trial justices' in managing a trial calendar * * *."

- 13 -

*Coates v. Ocean State Jobbers, Inc.*, 18 A.3d 554, 558 (R.I. 2011) (quoting *Bergeron v. Roszkowski*, 866 A.2d 1230, 1235 (R.I. 2005)).

At the time defendant sought to bring in new expert testimony in February 2022, the deadline to disclose expert witnesses had long passed. In fact, after the pretrial order in February 2020 that set the expert disclosure deadline for May 2020, defendant offered not one expert. Despite defendant's contentions that the pretrial order did not apply because the present case was a consolidated matter and the pretrial order applied only to the other case, we recognize that this case has been pending since 2011, and we see no abuse of discretion or implication of resulting unfair prejudice in the hearing justice's decision not to allow this new expert testimony so long after the close of discovery.

Therefore, we are satisfied that the hearing justice did not err in admitting the note into evidence.

**Mutual Mistake**

In his decision, the hearing justice comprehensively and meticulously reviewed the evidence and concluded that "it is beyond clear to the [c]ourt, based upon the substantial amount of evidence submitted in this case, that the parties intended for Equity One or its designated nominee, MERS,[2] to have a first-priority mortgage on the [p]roperty that would secure Natale and Potenza's obligations under

---

[2] The acronym "MERS" stands for Mortgage Electronic Registration Systems, Inc.

- 14 -

the [n]ote." Consequently, he granted plaintiff's motion to equitably reform the mortgage.

The defendant claims that, because there was no testimony regarding the intent of the original lender at signing, there was insufficient evidence to determine the intent of the parties and, thus, insufficient evidence to reform the mortgage under the doctrine of mutual mistake.

"When 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his or hers * * *.'" *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210 (R.I. 2015) (brackets omitted) (quoting *JPL Livery Services, Inc. v. Rhode Island Department of Administration*, 88 A.3d 1134, 1142 (R.I. 2014)). "This Court consistently has held that factual findings of a trial justice sitting without a jury are granted an extremely deferential standard of review." *State v. Gianquitti*, 22 A.3d 1161, 1165 (R.I. 2011).

It is clear to us that there is competent evidence in the record to support the hearing justice's findings. Indeed, based on the evidence presented at the hearings, the hearing justice found that there had been a mutual mistake between the parties at the original signing. The hearing justice cited a wealth of evidence demonstrating the intent of the parties. He noted that the evidence in the record, such as the homeowner insurance verification and authorization, truth-in-lending disclosure, numerous documents related to the refinancing request, and the affidavit of title all

- 15 -

listed Natale and Potenza as the "borrowers" and the property as the "collateral" to which the "security interest" was attached. After considering the testimony at the hearings, the hearing justice concluded that there was "no question that the parties to the instant transaction understood and intended for Equity One * * * to have a first priority mortgage on the [p]roperty to secure Natale and Potenza's obligations under the Note * * *." The hearing justice further determined that the fact that Natale and Potenza had executed the mortgage in their individual capacities, thus rendering the security interest unenforceable, was "due to a mutual mistake and/or an unintended error" and that to not reform the mortgage "would be to go against the interests of justice and fairness * * *."

Accordingly, we are satisfied that there was sufficient evidence in the record to support the hearing justice's order for reformation of the mortgage.

### Reformation of the Mortgage without Reformation of the Note

Finally, defendant contends that the hearing justice made two distinct errors of law, the first of which is that the hearing justice erred in reforming the mortgage without also reforming the note. At oral argument, defendant asserted that the mortgage can *only* secure the obligation of the borrower and that, as such, both the note and the mortgage must be reformed. Otherwise, defendant contends that the note becomes void.

The defendant's argument fails. As a treatise on the topic notes, "[i]t is axiomatic that a mortgage is security for the performance of an act * * * [and] [t]he performance may be by the mortgagor, or by some other person; thus, a mortgage to secure the debt of another is plainly valid." Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 2.1 at 15 (3d ed. 1994). This Court, too, has recognized that "[t]he law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt. These are distinct interests, and they may be held by different parties." *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1088 (R.I. 2013) (quoting *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 292 (1st Cir. 2013)).

As plaintiff correctly posits, although our caselaw on the topic is not extensive, we are not alone in recognizing that these distinct interests allow the mortgagor and the borrower to be different parties without affecting the enforceability of the security interest itself. *See Deutsche Bank National Trust Company v. Holden*, 60 N.E.3d 1243, 1251 (Ohio 2016) (discussing the existence of two separate legal interests where the mortgage was signed on behalf of two persons and the note was signed on behalf of only one of those persons); *Pitrolo v. Community Bank & Trust, N.A.*, 298 S.E.2d 853, 856-57 (W. Va. 1982) (holding that consideration need not flow to the guarantor for the deed of trust to adequately secure

- 17 -

the note).  Therefore, we hold that the hearing justice did not err by reforming only the mortgage.

**Remote Hearing**

The defendant next argues that the hearing justice committed an error of law by allowing the hearings to be conducted remotely.  The defendant emphasizes that due process requires "that trials * * * be conducted in public with access to the evidence."  The consideration of defendant's argument in this regard requires us to revisit the dark days of the COVID-19 pandemic, during which the courthouses in Newport and Washington Counties were temporarily closed, and the number of persons entering the state's other courthouses was sharply restricted.  The Court was able to continue its business largely because judges, lawyers, litigants, and the public adapted so readily to remote technology, including the ability to provide public access to proceedings via live-streaming of arguments.  Of significance to the case before us, on April 2, 2021, the Superior Court amended the Superior Court Rules of Civil Procedure, as approved by the Supreme Court, by allowing any hearing to be "conducted in whole or in part by remote means on the Court's own initiative, or upon a request by a party and at the Court's discretion." Super. R. Civ. P. 7(b)(4). On July 20, 2021, the Chief Justice of the Rhode Island Supreme Court issued an executive order providing that each court within the unified judicial system identify "all case or hearing types that shall continue on a remote basis," indicating that such

hearings are "highly encouraged." Supreme Court Executive Order No. 2021-04(4)-(5).  The executive order also stated that "[j]ury and bench trials may resume without restriction. With the consent of all parties and the Court, bench trials may be conducted remotely." *Id.* at (3)(A).

In response thereto, on July 30, 2021, the Presiding Justice of the Superior Court issued two administrative orders (AOs). *See* Superior Court Administrative Order No. 2021-05; *see also* Superior Court Administrative Order No. 2021-06.  AO 2021-05 provided, *inter alia*, that "[b]ench trials may be conducted remotely with the consent of all parties." AO 2021-06 established protocols for remote hearings and included "bench trials," "business calendars," and "non-jury hearings" among the "case or hearing types that may be conducted remotely * * *."

At the time that the hearings in this case commenced, in September 2021, the operative orders and rules allowed for remote hearings in a wide variety of case types and permitted bench trials by remote means with the consent of all parties.  The hearing justice determined that the matter before him was a motion, not a bench trial. As he clarified at the outset of his written decision:

> "[T]he hearings held by this Court related solely to Deutsche Bank's Motion to Equitabl[y] Reform Mortgage and was not a bench trial on Deutsche Bank's underlying suit against Alebia.  Consequently, the [c]ourt will not consider or address issues or arguments unrelated to Deutsche Bank's Motion to Equitably Reform Mortgage."

We disagree. It is our belief that the proceeding before the hearing justice was, in essence, a bench trial. The relief the plaintiff sought in the motion to equitably reform the mortgage mirrored the relief it requested in count one of its amended complaint, that "[t]he [m]ortgage should be reformed to be executed in the name of the record owner of the property, Alebia * * *." Because the hearings were essentially a bench trial that granted the original relief sought in the underlying suit and because the defendant did not consent to the remote hearings as thus would have been required under AO 2021-05, we believe the hearing justice erred when he elected to hold the hearings remotely over the defendant's objections. We are of the opinion, however, that the error was harmless. We reject any notion that the defendant was denied its due-process rights, particularly in light of public access to remote proceedings and the plaintiff's offer to make the original note available for inspection in chambers. We are satisfied that the remote nature of the hearings did not affect the outcome of the proceedings. *See State v. Hazard*, 797 A.2d 448, 470 (R.I. 2002).

## IV

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-1 v. Alebia, Inc. |
| **Case Number** | No. 2023-44-Appeal. (PB 11-5398) |
| **Date Opinion Filed** | April 17, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff: Michael P. Robinson, Esq. |
| | For Defendant: John B. Ennis, Esq. |