**Myriam DIEHL, Plaintiff–Appellant,**

v.

**H.J. HEINZ COMPANY and Metromail Corporation, Defendants–Appellees.**

**No. 89–2165.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1990.

Decided April 24, 1990.

James P. Costello, Thomas M. O'Connell, Des Plaines, Ill., for Myriam Diehl.

Thomas J. Keevers, Kathleen A. Smith, Richard M. Hittle, Keevers & Hittle, Chicago, Ill., for H.J. Heinz Co.

Jack T. Riley, Jr., Kevin G. Owens, Gregory D. Conforti, Thomas H. Fegan, Johnson, Cusack & Bell, Chicago, Ill., for Metromail Corp.

Before CUMMINGS, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

The district judge dismissed the complaint, with prejudice, as a sanction for the plaintiff's failure to comply with the defendants' discovery requests. Fed.R.Civ.P. 37(b)(2)(C), (d). We must decide whether, in doing so, she abused the broad discretion that federal trial judges possess to punish dilatory litigation tactics.

The plaintiff, Myriam Diehl, a truck driver, filed this diversity tort suit on October 1, 1988, against H.J. Heinz Company and Metromail Corporation. She claims to have been injured when struck on December 16, 1987, by a forklift at a warehouse owned by Metromail, and again on May 4, 1988, when she tripped over debris in a warehouse owned by Heinz. It may seem odd that a single complaint should encompass injuries inflicted four and a half months apart by different firms not acting in concert, but her claim is that the accident at the Heinz warehouse aggravated the back injury she had sustained in the accident at the Metromail warehouse. If true, and if both defendants were negligent or otherwise culpable, this would make them successive joint tortfeasors despite the lack of concert between them. Prosser and Keeton on the Law of Torts, § 52, at p. 352 (5th ed. 1984). And it is of course proper

to sue joint tortfeasors in the same complaint. *Poster v. Central Gulf S.S. Corp.*, 25 F.R.D. 18, 20 (E.D.Pa.1960); *Lucas v. City of Juneau*, 127 F.Supp. 730, 732 (D. Alaska 1955); Fed.R.Civ.P. 20(a); 7 Wright, Miller & Kane, Federal Practice and Procedure § 1653, at p. 385 (2d ed. 1986); 7 *id.*, § 1657, at p. 404 and n. 11. In fact the concept of successive injurers as joint tortfeasors is derived from joinder, not tort, principles. Prosser and Keeton on the Law of Torts, *supra*, § 47, at pp. 324–28.

Judge Conlon set May 24, 1989, as the date for completion of discovery. The plaintiff's deposition was originally scheduled for March 23, but her lawyer notified the defendants' lawyers the day before that she would not appear, and it was rescheduled for April 10. The plaintiff's lawyer had promised to complete the answers to the defendants' interrogatories and document requests by April 7. He not only missed this deadline, but on the morning of April 10 notified the defendants' lawyers that his client would not be appearing for her deposition that day.

The defendants moved to dismiss the suit as a sanction for the plaintiff's failure to cooperate in discovery. Fed.R.Civ.P. 37(d). The motion was set for a hearing on May 3, and notice was served at the address that was listed for the plaintiff's lawyer on the docket sheet. However, without bothering to notify either the court or the defendants, the plaintiff's lawyer had moved his offices from Chicago to Des Plaines, and he claims not to have received the notice. Whether or not this is true, it certainly is true that he failed to show up for the May 3 hearing, whereupon Judge Conlon issued a one-line order dismissing the suit. Rule 37(b)(2)(C) makes dismissal a possible sanction under Rule 37(d).

The order of May 3 did not indicate whether the dismissal was with prejudice. Rule 41(b) provides (with immaterial exceptions) that a dismissal is with prejudice unless the court indicates otherwise, but because Judge Conlon's subsequent order, as we shall see, specified that dismissal was with prejudice, it is unclear whether she meant the May 3 dismissal to be with prejudice.

The plaintiff's lawyer filed a prompt motion to vacate the May 3 order, and at a hearing on May 11 Judge Conlon granted the motion on condition that the plaintiff agree to "comply with all outstanding discovery requests by close of business this date." The plaintiff's lawyer agreed—what choice had he when the judge said "if you're not willing to do it the motion to vacate is denied"?—and like a Keystone Cop of silent movie days scurried about with desperate haste in an effort to comply. He had earlier furnished the defendants with unsigned interrogatory answers to assist them in preparing for the deposition (which never took place) of his client, and at the hearing on May 11 it seemed that all he had to do to comply with the judge's order was obtain the plaintiff's signature on the answers. But because the court is in Chicago, the lawyer's office in Des Plaines, and his client in LaSalle, it was impossible to obtain her signature by 4:30 p.m., the close of the district court's business day. On May 16 and 17, in response to the defendants' renewed motions to dismiss, Judge Conlon ordered the case dismissed with prejudice. She recited the history leading up to her order of May 3, but the only clearly stated ground for dismissal was the plaintiff's failure to comply with all discovery requests by the close of business on May 11. At brief hearings on May 16 and 17 that preceded the orders of dismissal, the lawyers got into a spitting match over the extent to which and reasons that other discovery requests by the defendants were still outstanding, but the judge, saying she was "not a human polygraph" and "can't determine who said what to whom," did not resolve the disagreement among the lawyers.

The order of May 3, dismissing the suit for failure to comply with the defendants' requests for discovery on a timetable to which the plaintiff's lawyer had agreed, was within Judge Conlon's discretion. It is true that on May 3 the suit was only seven months old, and, because it had been brought so soon after the accidents, the statute of limitations had not yet run. But

the ground of the order of dismissal was not failure to prosecute, but violation of discovery requests. The violations were unexcused, and therefore willful. As such, they justified a harsh sanction up to and including dismissal with prejudice, *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280 (7th Cir.1988) (per curiam); *Hindmon v. National–Ben Franklin Life Ins. Corp.*, 677 F.2d 617 (7th Cir.1982), although it is unclear whether this is the form of dismissal that Judge Conlon intended on May 3. We are completely sympathetic to the efforts of the exceedingly busy district judges in Chicago to run a tight ship, and we are therefore exceedingly reluctant to interfere with their imposing heavy sanctions on parties and counsel who flout the rules and usages of federal litigation.

But the ruling under review is not the order of May 3. It is the dismissal of the suit with prejudice because the plaintiff failed to comply with the condition in Judge Conlon's order of May 11 reinstating the suit. The condition was unreasonable, because it could not be complied with. She might as well have asked the plaintiff's attorney to hold his breath until 4:30. Judge Conlon did not have to reinstate the case, but she could not make reinstatement contingent on compliance with an unreasonable condition. So conditioned, the action of May 11 was irrational, and likewise the dismissal of the suit on May 16 and 17, predetermined by the order of May 11. We cannot uphold an irrational ruling.

Of course it is necessary to distinguish unreasonable conditions from hyperbolic or metaphoric modes of expression. If Judge Conlon had said that she would not reinstate the case until hell froze over, we would not reverse on the ground that she had set an unreasonable condition; her intent to deny the motion for reinstatement would be plain. But we do not think that in asking the plaintiff's lawyer to do what proved to be impossible the district judge was indulging a sadistic taste. No doubt she failed to realize that compliance would be, in fact, impossible, given the location of the lawyer and of his client in relation to each other and to the courthouse. In this misconception she was encouraged by the lawyer, who in response to her statement that "if you're not willing to do it [i.e., complete the response to the defendants' discovery requests by the end of the day] the motion to vacate is denied," stated "I'm willing to comply with your order, Judge." Ordinarily such a statement would constitute a waiver of any subsequent challenge to the condition. But what choice had the lawyer? If he said he was unwilling to comply, and even if he added, because he could not comply, the judge, already irritated with him, was likely to deny out of hand the motion to reinstate the suit. The judge was not sandbagged by the lawyer's statement that he was willing to comply with her order, because she held two more hearings, on May 16 and 17, before dismissing the suit, and it became apparent at those hearings that it had been impossible to obtain the plaintiff's signature on the interrogatory answers by the close of business on May 11. Unfortunately, by taking the position that she was not a "human polygraph"—although that is not a bad description of what trial judges and jurors are—she disabled herself from resolving questions of credibility on which the reasonableness of the response of the plaintiff's lawyer to the order of May 11 may have depended.

The comments made by Judge Conlon in the hearings on May 16 and 17 radiate dissatisfaction with the conduct of this litigation by the plaintiff's lawyer. That dissatisfaction may well be merited, and may well have merited sanctions up to and including dismissal with prejudice. But it was not the stated ground of dismissal. The only stated ground was failure to comply with a condition that was unreasonable.

We could merely remand the case to give Judge Conlon an opportunity to decide anew whether the conduct of the plaintiff or her attorney warrants dismissal. But this would incite a new round of accusations and hearings, and could well lead to another appeal. It seems better in the circumstances to grant the plaintiff a fresh

start, and we therefore reverse the dismissal of the suit. But in doing so we emphasize that Judge Conlon is free to set tight deadlines for the future conduct of this suit and to punish failure to comply with those deadlines.

REVERSED AND REMANDED, WITH DIRECTIONS.