Maridel ALLEN, individually and on behalf of statutory beneficiaries, Frank Edward ALLEN and John M. Allen, III

v.

SOUTH COUNTY HOSPITAL et al.

No. 2006–6–Appeal.

Supreme Court of Rhode Island.

April 14, 2008.

Kris Macaruso Marotti, Warwick, for Allen.

Dennis T. Grieco, II, Providence, for Dr. McCormick.

Stephen P. Harten, Providence, for South County Hosp.

Present: GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The plaintiff in this medical negligence and wrongful death action was left high and dry when her primary expert witness abandoned her litigious ship just seven weeks before the scheduled trial date. Unable to secure a new expert witness before the case was reached for trial, the plaintiff moved to continue the trial date on three occasions. The trial justice rebuffed each of her efforts to forestall the commencement of trial and, further, when the plaintiff represented that she was unable to proceed on the scheduled trial date, the trial justice dismissed her action for lack of prosecution under Rule 41(b)(1) of the Superior Court Rules of Civil Procedure.

Later that very day plaintiff was contacted by another potential expert witness with whom she previously had consulted and who indicated he would be willing to testify on her behalf. She then filed a motion to vacate judgment under Rule 60(b)(6) of the Superior Court Rules of Civil Procedure, which motion was granted subject, however, to certain conditions. One such condition was that she post a corporate surety bond for $60,000 to secure payment of defendants' reasonable costs and attorneys' fees that were (1) related to her postjudgment motion to vacate; (2) incurred in the researching, investigating and analyzing the opinions of the new expert witness, as well as in deposing him; and (3) incurred with respect to trial preparation. The plaintiff appealed from the original judgment of dismissal and from the conditions that were attached to the granting of her motion to vacate. The defendants also have cross-appealed from the granting of plaintiff's motion to vacate. On January 24, 2006, this Court stayed all Superior Court proceedings.

On September 20, 2007, however, this Court, sitting in conference, determined that the appeals were not properly before the Court. We vacated the stay and remanded the case to the Superior Court with instructions that if plaintiff complied with the conditions imposed by the order granting her motion to vacate, the case would remain in the Superior Court for further proceedings. If, on the other hand, plaintiff did not comply with the conditions, the original judgment would be reinstated, and the case returned to this Court for consideration of the issues raised in the appeals. On remand, plaintiff represented that she was unable to post the $60,000 bond. Thus, the motion to vacate was deemed denied, and the case returned to the Supreme Court, where it was placed on the show-cause calendar for oral argument. After considering the oral and written submissions of the parties and reviewing the record, we reverse the denial of plaintiff's motion to vacate and modify the conditions imposed by the trial justice.

## I

### Facts and Procedural History

The plaintiff, Maridel Allen, individually and on behalf of other statutory beneficiaries, Frank Edward Allen and John M. Allen, III, filed a complaint on August 23, 2001, alleging that negligent medical care in connection with an intubation procedure

resulted in the death of their mother, Helen Jean Allen, on August 24, 1998. Named as defendants were South County Hospital, James P. McCormick, M.D., a pulmonologist, and James F. Griffin, D.O., an anesthesiologist. After the parties engaged in extensive discovery, the case first was assigned to a "date certain" trial date on January 24, 2005. Difficulties with respect to scheduling a deposition of one of plaintiff's expert witnesses in Delaware led to a continuance of the trial date to May 16, 2005.

On May 8, 2005, plaintiff filed a motion for a continuance of the trial date because her primary expert witness, Aaron B. Waxman, M.D., was unavailable to testify during the week of May 16, 2005. A hearing justice denied the motion and plaintiff then made a request for a stay so she could file a petition for writ of certiorari in this Court. The next day, however, the trial justice contacted all parties and stated that after further consideration he would grant plaintiff's motion for continuance. After much discussion concerning various scheduling conflicts, the trial justice rescheduled the trial for November 28, 2005, and he scheduled on the calendar a status conference for October 6, 2005.

The plaintiff notified her expert witnesses of the new trial date. After the status conference on October 6, 2005, at 8:51 p.m., plaintiff's counsel received an e-mail from Dr. Waxman indicating not only that he was unavailable to testify on the assigned trial date, but also that he was unwilling to continue to serve as an expert witness. The plaintiff's counsel later represented to the court that over the next three weeks he made "diligent efforts" to contact Dr. Waxman by telephone, letter, and e-mail in an attempt to address Dr. Waxman's concerns about acting as an expert witness in this case.

On October 27, 2005, plaintiff filed a motion to vacate the trial date and for a continuance. The trial justice,[1] after considering the procedural history of the case, plaintiff's efforts to secure a new expert witness, and defendants' interests, denied the motion on November 4, 2005. According to an affidavit of plaintiff's counsel, on or about November 7, 2005, he attempted to find a new expert witness by contacting National Medical Consultants, P.C. In furtherance of this effort, plaintiff's medical records and a retainer check were forwarded to a potential new expert witness, Dr. Paul Mayo. The plaintiff thereafter renewed her motions to vacate the trial date and for a continuance, which were heard and denied on November 23, 2005.

When this case was reached for trial on the morning of November 28, 2005, plaintiff again moved for a continuance, this time asserting that she had been in contact with Dr. Mayo, and that he was expected to inform her later that day whether he would be willing to testify on her behalf. The trial justice denied the motion for a continuance because it was uncertain whether Dr. Mayo would be able to testify in the case, and the trial justice would not "permit that kind of speculation to be the basis for a motion for a continuance." Furthermore, because plaintiff indicated she was not ready to proceed without an expert witness, the trial justice dismissed the case for lack of prosecution under Rule 41(b)(1). A judgment was entered dismissing plaintiff's allegations with prejudice on December 2, 2005, and plaintiff appealed that dismissal on December 21, 2005.

---

1. The trial justice who presided on and after October 6, 2005 was not the original trial justice, apparently because of the normal rotation of Superior Court justices in Washington County.

In the meantime, at approximately 3:45 p.m. on November 28, 2005, Dr. Mayo did advise plaintiff that he was willing to testify as an expert witness on her behalf. On December 9, 2005, plaintiff filed a motion to vacate the judgment of dismissal under Rule 60(b)(6). At the first hearing on the motion, the trial justice declined to rule on the motion, but instead asked the parties to submit an estimate of the anticipated expenses in light of a new expert opinion being offered. After a second hearing on January 3, 2006, the trial justice granted plaintiff's motion to vacate upon several conditions. Specifically, plaintiff was to be responsible for the payment of defendants' reasonable costs and attorneys' fees relating to the postjudgment motion to vacate and the opinions of Dr. Mayo, as well as any trial preparation costs if the case proceeded to trial. Also, plaintiff was required to post and file a corporate surety bond of $60,000 ($20,000 for each defendant), to secure payment for the defendants' anticipated costs and fees. If plaintiff did not meet the bond requirement by January 23, 2006, the motion to vacate would be deemed denied and the judgment of dismissal would instead remain valid and final. Finally, the order stayed all prejudgment interest in the case as of November 28, 2005.

The plaintiff appealed from the entry of the order granting her motion to vacate because of the conditions placed on plaintiff in the order, and defendants cross-appealed. This Court remanded the case to the Superior Court, however, stating that "an order granting a motion to vacate is interlocutory and not appealable." On remand, plaintiff represented to the Superior Court that she did not have the financial means to comply with the conditions imposed by the order, and in particular the requirement that she post a $60,000 bond. An order was entered denying the motion to vacate and reinstating the judgment in favor of defendants. On appeal, plaintiff argues the trial justice abused his discretion by failing to grant her motion for a continuance, by dismissing her complaint under Rule 41(b)(1), and by imposing overly burdensome terms and conditions upon the grant of her motion to vacate judgment. The defendants cross-appealed, arguing that the trial justice abused his discretion by granting plaintiff's motion to vacate judgment. In the alternative, they argue that the trial justice did not abuse his discretion by imposing just and equitable terms and conditions.

## II

### Discussion

#### A. Conditional Motion to Vacate

◼ We begin our discussion with plaintiff's challenge to the terms and conditions upon which the trial justice conditioned the grant of her motion to vacate judgment, terms and conditions that she characterizes as unfair and unduly burdensome. She particularly objects to the requirement that she post a bond of $60,000, which she argues constitutes a "financially insurmountable barrier." She further contends that the trial justice abused his discretion by requiring her to be responsible for defendants' reasonable costs and attorneys' fees in connection with the motion to vacate and in addressing the opinion of her new medical expert witness, as well as the costs defendants would incur with respect to trial preparation.

◼ Rule 60(b) provides in part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding * * * [for] (6) any other reason justifying relief from the operation of the judgment." On appeal, this Court employs an abuse of discretion stan-

dard in reviewing the ruling of a trial justice. "A Rule 60(b) motion to vacate is addressed to the trial justice's sound judicial discretion and 'will not be disturbed on appeal, absent a showing of abuse of discretion.'" *Keystone Elevator Co. v. Johnson & Wales University*, 850 A.2d 912, 916 (R.I.2004) (quoting *Crystal Restaurant Management Corp. v. Calcagni*, 732 A.2d 706, 710 (R.I.1999)).

Our Rule 60(b) is nearly identical to Rule 60(b) of the Federal Rules of Civil Procedure, and, as a result, we find federal cases interpreting this rule to be instructive. *See Hall v. Insurance Co. of North America*, 727 A.2d 667, 669 (R.I.1999) ("[F]ederal-court interpretations of a procedural rule that is substantially similar to one of our own state rules of civil procedure should serve as a guide to the construction of our own rule."). In *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 74 (7th Cir. 1990), an order was entered dismissing the suit as a sanction for the plaintiff's failure to cooperate in discovery. The plaintiff filed a motion to vacate the order and the trial judge granted the motion on the condition that the plaintiff agree to "comply with all outstanding discovery requests by close of business this date," which essentially required the plaintiff's attorney to obtain his client's signature on a document and return the document to the court by the end of the day. *Id.* The plaintiff's attorney agreed to the condition although satisfying it would be impossible because of the distance between the courthouse, the lawyer's office, and the client's residence. *Id.* The plaintiff's attorney did not meet the condition for the motion to vacate to be granted and, as a result, the defendant's counsel filed a renewed motion to dismiss, which the trial judge granted. *Id.*

The Seventh Circuit stated that the condition was "unreasonable, because [the condition] could not be complied with." *Diehl*, 901 F.2d at 75. As a result, the court concluded that the conditional motion to vacate was "irrational" and likewise the eventual dismissal of the suit was predetermined by a condition placed on the motion to vacate. *Id.* The court acknowledged that the trial judge likely "failed to realize that compliance would be, in fact, impossible" given the circumstances. *Id.* The Seventh Circuit granted the plaintiff a "fresh start" by reversing the dismissal of the suit. *Id.* at 75–76.

In *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966), the trial judge conditioned a motion to vacate on the defendant's placing the maximum amount that the plaintiff demanded in her complaint, nearly double the amount entered by the default judgment, in a joint bank account. As a result, the plaintiff was placed in a substantially better position than she was at the outset of the litigation. *Id.* at 695. The court commented that when conditions are placed on motions to vacate, "[t]he condition most commonly imposed is that the [party in default] reimburse the [opposing party] for costs—typically court costs and attorney's fees—incurred because of the default." *Id.* at 694. The court stated that "[w]hen such an extraordinary condition is approved it must be accompanied by supporting findings to show that it represents a reasonable exercise of discretion." *Id.* at 695. The court also stated that if a trial judge "concludes, with supporting findings, that an unusual condition is called for, he should also consider whether one less onerous than that originally imposed may not be more appropriate." *Id.* Furthermore, the court stated that if the defendant's claim that he "simply is unable to comply with the condition imposed is true, serious questions are raised, questions having an aura of denial of due process of law." *Id.* (citing *Societe Internationale Pour Participations In-*

*dustrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209–10, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (*Societe Internationale* )).

In the instant case, it is evident from a review of the transcripts of the two hearings on December 15, 2005 and January 3, 2006,[2] that the trial justice gave a great deal of thought and consideration to the question of, as he phrased it, "how to deal in an equitable and just way with the fact that none of the [parties] sitting here today brought about the circumstance that ultimately led to the dismissal of this case." Rather, the situation that confronted the court "was precipitated by an unanticipated decision of a trial expert to abandon the plaintiff's claim after some four or more years of reliance by the plaintiff on the opinions articulated by that expert which form the basis for the claim itself * * *."

In granting the motion to vacate judgment the trial justice imposed several conditions, three of which required plaintiff to assume responsibility for various costs and attorneys' fees defendants incurred. The relevant paragraph of the order reads as follows:

"1. Plaintiff shall be responsible to each Defendant for payment of the following costs and attorneys' fees incurred:

"a. All reasonable costs and attorneys' fees related to Plaintiff's post-Judgment Motion to Vacate, including but not limited to reviewing and researching all materials submitted by Plaintiff in support of her motion, researching and preparing any responses to that motion and attending any and all hearings regarding that motion;

"b. All reasonable costs and attorneys' fees incurred in addressing the disclosure(s) and opinions of Dr. Mayo, including but not limited to researching, investigating and analyzing the opinions and background of Dr. Mayo, including medical literature research, deposing Dr. Mayo and having defense experts research, analyze and/or respond to the opinions of Dr. Mayo; and

"c. All reasonable costs and attorneys' fees incurred with respect to trial preparation, should this matter proceed to a trial on its merits."

We need not linger over the first two conditions, paragraphs 1(a) and (b), for it is clear to us that plaintiff has waived any objection to them. When asked by the trial justice on December 15, 2005, "What would you consider to be terms that would be just if I were to do what you're asking me to do?", plaintiff's counsel responded, "Your Honor, whatever you feel is just is—if you feel that we have to reimburse the defendants for the cost of their experts, reviewing a deposition transcript and formulating new opinions and submitting updated responses to an expert interrogatory, I don't have a problem with that." Shortly thereafter, the following exchange took place:

"[THE COURT]: But, what I'm thinking about is in the nature of putting the defendants in a position, financially, at least, where they would be, had it not been for the turn of events resulting in both the motions for continuance and the motions for entry of judgment and

---

**2.** None of the parties formally submitted a transcript of the hearing on January 3, 2006. A copy, however, was attached to plaintiff's memorandum of law to support her motion for stay of order pending appeal, which was filed in this Court on January 20, 2006.

entry of judgment in this motion, and whatever might occur subsequent to this motion, if I were to grant it. So, I am thinking in terms of attorney's fees, costs, expert witness fees on their part, whatever travel expenses or other costs are associated with getting this case back to trial, and I would want to hear from the defendants as to any other costs that they feel would put them back in a position of being in the position they were at before we embarked on this journey.

"[PLAINTIFF'S COUNSEL]: I don't have a problem with that, Your Honor."

At the hearing on January 3, 2006, plaintiff's counsel took issue with the extent of the additional costs that defendants had indicated were anticipated if the judgment were to be vacated. Nevertheless, plaintiff's counsel agreed with the trial justice that defendants' experts would have to review Dr. Mayo's responses to interrogatories or deposition transcripts, stating: "I don't think it would be unreasonable for the Court to make that part of the order as far as the costs to be paid." In light of these representations by counsel, we believe plaintiff has waived any objection to reimbursing defendants for their reasonable costs and attorneys' fees related to the motion to vacate and to addressing the disclosure(s) and opinions of Dr. Mayo.

We are of the opinion, however, that paragraph 1(c) of the order requiring plaintiff to be responsible to defendants for "[a]ll reasonable costs and attorneys' fees incurred with respect to trial preparation" constitutes an abuse of discretion and must be stricken. Whatever the intention of the trial justice may have been, the language of paragraph 1(c) is overly broad and open-ended. The condition arguably encompasses a wide range of potential expenses totally unrelated to plaintiff's eleventh-hour replacement of her primary expert witness. It would be clearly unjust to require plaintiff to subsidize defendants for trial preparation expenses, some of which they undoubtedly would have incurred had the trial proceeded on November 28, 2005. We vacate, therefore, paragraph 1(c) of the order.

■ The condition that causes plaintiff the greatest consternation is paragraph 2 of the order requiring that plaintiff post a corporate surety bond of $60,000, $20,000 for each defendant, or see her motion to vacate judgment be denied. The plaintiff asserted both in the Superior Court and in this Court, in conjunction with motions for a stay, that she lacks the financial means to procure such a bond and, consequently, the requirement for all practical purposes deprives her of a right to a trial on the merits. Indeed, after we remanded the case to the Superior Court, she represented that she could not comply, and her motion to vacate was denied.

On appeal, plaintiff reiterates that the bond requirement "was unfair and unduly burdensome" and "placed a substantial and inequitable burden upon [her] to raise significant sums of money just to enable her to proceed with the trial on the merits." She further contends that she has "already invested significant time and expense in the preparation of her case," expenses which were significantly increased by the necessity of engaging a new expert witness.

We are satisfied that the imposition of the bond requirement amounted to an abuse of discretion by the trial justice. After granting the motion to vacate, the trial justice noted that under Rule 60(b) he could do so only "upon such terms as are just." He then considered, appropriately we believe, the additional burden and expense accruing to defendants thereby. He said:

"[I]t seems to the Court that the rule gives to the Court ample discretion in overriding the finality of a judgment in favor of allowing a case to be determined on the merits to ensure as best as possible that the defendants not pay the price for the extraordinary circumstances which have formed the basis for the motion, because, clearly, those extraordinary circumstances were not caused by them or by their counsel. And they should not bear the financial burden of the Court's allowing the case to be reinstated."

He then estimated the anticipated costs to each defendant to be approximately $20,000 and ordered plaintiff to post a $60,000 bond as a condition of proceeding to a trial on the merits.[3] He did not, however, at any time consider the financial wherewithal of plaintiff or her ability to obtain such a surety bond. If she lacked the financial means, as she later asserted, the condition was no condition at all; rather, it was an absolute bar and, in effect, a denial of her motion to vacate. Access to our courts ought not depend upon pecuniary preconditions. *See Societe Internationale,* 357 U.S. at 209, 78 S.Ct. 1087 (in the context of a dismissal under Fed.R.Civ.P. 37 "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause").

Although he said it was a close call, the trial justice granted plaintiff's motion to vacate, finding that plaintiff was placed in an untenable position when her expert witness "jump[ed] ship" through no fault of her own or her counsel's. He further found that "counsel did what had to be done and what was necessary to try to secure * * * expert testimony" when faced with "extraordinary, unique circumstances." He also considered the additional expenses to which defendants probably would be exposed, as a result of vacating the judgment of dismissal. He did not, however, consider plaintiff's ability to obtain a $60,000 corporate surety bond as prerequisite to proceeding to a trial on the merits. Thus, there are insufficient findings to enable us to conclude that the bond requirement was a reasonable exercise of discretion. Lacking such supportive findings, we are of the opinion that the trial justice abused his discretion by conditioning the grant of the motion to vacate upon an obligation that proved impossible to perform. Accordingly, we vacate paragraph 2 of the order, as well as paragraph 1(c), but we affirm the order in all other respects.[4]

---

3. We note that in response to a question from the trial justice, plaintiff's counsel indicated that he estimated the total costs to be $25,000 to $30,000. This was merely an estimate, however, and by no means a representation that his client could afford to obtain a bond for that amount.

4. The remaining conditions set forth in the order are:

"3. On or before January 23, 2006, Plaintiff shall submit a properly sworn and notarized version of the Affidavit of Dr. Mayo that Plaintiff presented to the Court on January 3, 2006.

"4. All pre-Judgment interest in this matter will be stayed and no longer accrue or accumulate as of November 28, 2005." The order also provides that "2. * * * [t]he amount of costs and attorneys' fees to be paid to each Defendant * * * shall be determined upon hearing of the Court, at which time defense counsel shall file with the Court an itemized statement of actual attorneys' fees and costs incurred. No limit has been set by the Court at this time with regard to the amount of costs and attorneys' fees to be paid to each Defendant * * *." We would only add that plaintiff's ability to pay will also be a relevant consideration at any such hearing.

## B. Defendants' Cross–Appeals

 The defendants cross-appeal from the granting of plaintiff's motion to vacate judgment, arguing that plaintiff failed to demonstrate any extraordinary, unique, or unusual circumstances that would justify relief from the judgment of dismissal under Rule 60(b)(6). We agree with defendants that Rule 60(b)(6) was "not intended to constitute a 'catchall' and * * * that 'circumstances must be extraordinary to justify relief.' " *Bailey v. Algonquin Gas Transmission Co.,* 788 A.2d 478, 483 (R.I.2002) (quoting *Bendix Corp. v. Norberg,* 122 R.I. 155, 158, 404 A.2d 505, 506 (1979)). As we previously noted in our order remanding the case to the Superior Court, however, "an order granting a motion to vacate is interlocutory and not appealable." Moreover, we are convinced, as was the trial justice, that the loss of plaintiff's primary expert witness at the eleventh hour indeed created extraordinary circumstances warranting the vacation of the judgment of dismissal.

## C. Judgment of Dismissal Under Rule 41(b)

The plaintiff also appeals from the entry of judgment dismissing her complaint for lack of prosecution under Rule 41(b)(1), arguing that the trial justice abused his discretion under the circumstances by not granting her a continuance. Because the Court is evenly divided on the issue, the judgment is affirmed.

## III

### Conclusion

Although we affirm the December 2, 2005 judgment in favor of the defendants, we also affirm the order vacating said judgment subject to the conditions as modified in this opinion. The record may be remanded to the Superior Court for further proceedings consistent herewith.

Chief Justice WILLIAMS did not participate.