January 23, 2024

| | | |
|---|---|---|
| Lauren Barnes | : | No. 2022-43-M.P. |
| | | (PC 16-2181) |
| v. | : | |
| Nancy Hodys. | : | |
| | | |
| Nancy Hodys et al. | : | No. 2022-44-M.P. |
| | | (PC 17-5776) |
| v. | : | |
| Lauren Barnes. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Lauren Barnes | : | No. 2022-43-M.P. |
| | | (PC 16-2181) |
| v. | : | |
| Nancy Hodys. | : | |
| | | |
| Nancy Hodys et al. | : | No. 2022-44-M.P. |
| | | (PC 17-5776) |
| v. | : | |
| Lauren Barnes. | : | |

Present: Suttell, C.J., Goldberg, Robinson, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** These consolidated cases are before the Court on a writ of certiorari. The cases arise out of an automobile accident involving Lauren Barnes and Nancy Hodys.[1] Barnes seeks review of a Superior Court order denying her request to modify the case's scheduling order, which prohibited her from either replacing a particular expert witness or "disclosing any additional expert witness(es) in the field[s] of toxicology, pharmacology or other similar specialty."

---

[1] There are two Superior Court cases under review. In PC 16-2181, Lauren Barnes is plaintiff and Nancy Hodys is defendant. In PC 17-5776, Nancy Hodys and her husband, Jack Hodys, are plaintiffs and Lauren Barnes is defendant.

Although Nancy Hodys and Jack Hodys share a last name, because Jack Hodys is a less central figure to the case at bar, we refer to Nancy Hodys by her last name and to Jack Hodys by his full name. No disrespect is intended.

This Court issued a writ of certiorari and directed the parties to appear and show cause why the issues raised should not be summarily decided. After considering the parties' written and oral submissions and carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we quash the order of the Superior Court and remand to that tribunal with instructions that it conduct a meaningful analysis of the issues raised, consistent with this opinion.

# I

## Facts and Travel

On December 14, 2014, Barnes and Hodys were involved in a head-on automobile collision on Putnam Pike in Glocester, Rhode Island. Both sustained serious, life-threatening injuries. Neither has any memory of the accident. Each was discovered unconscious and had to be extracted from her vehicle by first responders.

According to Paul Silva, an EMT who provided deposition testimony concerning his observations at the scene of the accident, a syringe was found in Barnes' car.[2] Silva reportedly noticed a so-called "track mark"—scarring that is commonly associated with habitual intravenous drug use—on Barnes' arm, as well

---

[2] We were not provided with Silva's deposition testimony or a related EMS report and could not locate either in the record. Our discussion of these matters thus derives from Dr. Benjamin's report and deposition testimony, where he described these observations.

as a "slight improvement" in her "level of consciousness" after she was administered Narcan, a drug used to reverse the effects of narcotics. Barnes' urine later tested positive for opioids and benzodiazepines.

On May 13, 2016, Barnes filed a complaint against Hodys in Providence County Superior Court, alleging that Hodys' car crossed the double-yellow line and caused the collision. She claimed that Hodys' negligence was the cause of her "personal injuries, permanent injuries, emotional trauma, pain and suffering, lost wages, lost earning capacity, and property damage." Hodys filed an answer on August 2, 2016, denying Barnes' claims and asserting various affirmative defenses, including an allegation that Barnes was intoxicated at the time of the crash.

On December 1, 2017, Hodys, joined by her husband, Jack Hodys, filed a complaint against Barnes. Hodys alleged that Barnes' negligence caused the accident, resulting in Hodys' extensive personal injuries and Jack Hodys' loss of consortium. Barnes filed an answer on December 19, 2017. An order consolidating the two cases in the Superior Court was entered on February 22, 2018.

Among other contentious questions of fact, the parties disputed whether Barnes was intoxicated at the time of the collision. Barnes represented that she planned to challenge the admissibility of evidence of her alleged narcotics use in a pretrial hearing in accordance with *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969). *See Handy*, 105 R.I. at 431, 252 A.2d at 441-42 (requiring a preliminary

evidentiary hearing regarding actual intoxication before evidence of the consumption of an intoxicant can be admitted).  To that end, Barnes engaged David M. Benjamin, Ph.D., as an expert witness in August 2018.  Doctor Benjamin is a Doctor of Pharmacology with postdoctoral training in clinical pharmacology and pharmacokinetics.

Doctor Benjamin provided Barnes with a report on March 3, 2020.  Relying on an EMS report, Barnes' Rhode Island Hospital records, Silva's deposition, and Dr. Benajmin's own expertise in pharmacology and the interpretation of urine drug-screen results, Dr. Benjamin concluded that it was "not possible to determine" whether head trauma, controlled substances, or medication caused the "impairment" that medical personnel observed in Barnes after the accident.  He opined that symptoms of Barnes' serious head injury would be "indistinguishable" from the effects of controlled substances and discounted the urine drug-screen results as evidence of mere "prior exposure" to substances that could have been "ingested days earlier." (Emphasis omitted.) He also claimed that Narcan would have caused Barnes' level of consciousness to "improve significantly," rather than just slightly, if opioids were the cause of her post-accident impairment.  For her part, Hodys engaged a pharmacology expert, Errol Green, M.D., to testify that "drugs taken by Ms. Barnes prior to the accident (such as [h]eroin) contributed to the positive urine opioid screen result."

On June 12, 2020, Barnes moved to set a scheduling order for fact discovery, expert disclosures, and dispositive motions. Hodys filed a limited objection, but did not object to Barnes' proposed timeline for expert witness discovery. On September 24, 2020, a scheduling order with deadlines for expert disclosures and discovery entered by agreement of the parties.

In compliance with this original scheduling order, Barnes served Hodys with her expert disclosures before the agreed-upon deadline in January 2021. The parties thereafter agreed to extend the timeline as to Hodys' experts and any rebuttal experts, as well as to overall expert discovery and dispositive motions. The parties agreed to push the overall expert discovery date back twice more, resulting in a final deadline of January 15, 2022.

On November 10, 2021, Hodys deposed Dr. Benjamin in a videoconference. Hodys drew Dr. Benjamin's attention to Silva's deposition testimony, and particularly to his observations of a syringe in Barnes' car and a track mark on Barnes' arm. Doctor Benjamin acknowledged that he was aware of these facts. When asked whether it was his opinion that it was "not possible to determine whether [Barnes' post-accident] impairment was because of drugs, medication, or a brain injury[,]" as he had previously concluded in his report, Dr. Benjamin responded that it could have resulted from "any or all" of these potential causes, but then elaborated that "a combination" was "the most likely explanation." When

asked to confirm that he believed that "a combination of drugs and brain injury" was "the most likely explanation" for her impairment, Dr. Benjamin did so, positing that he formed this opinion based on the materials he reviewed, "the knowledge of the symptoms and signs * * * in the record, * * * the medications that she received, and the fact that she had very severe head trauma."

After further questions regarding when Barnes could have consumed controlled substances, as well as objections from Barnes, Dr. Benjamin affirmed that he believed Barnes to have been impaired by controlled substances at the time of the accident. Under direct examination by Barnes, Dr. Benjamin asserted that he not only knew the cause of Barnes' post-accident impairment, but that it arose from "both trauma from the accident, and possibly some contributing factors from any medications she might have taken prior to driving." Thereafter, on November 30, 2021, Hodys filed motions to assign the case to the continuous jury-trial calendar and to accelerate the matter.

On December 22, 2021, Barnes filed a motion to modify the case scheduling order, specifically requesting "leave to replace her expert, Dr. David Benjamin." Barnes' counsel represented that, due to ongoing medical issues, Dr. Benjamin was unable to continue serving as an expert witness. In a sworn affidavit attached as an exhibit to the motion, Barnes' counsel stated that he had communicated with Dr. Benjamin about his expert opinion at least ten times between August 2018 and

the deposition, that Dr. Benjamin had "consistently opined that no scientifically reliable conclusions could be made regarding the cause of [Barnes'] post-accident impairment[,]" and that Dr. Benjamin's deposition testimony on this point was "contrary to all prior discussions" with counsel.  Counsel's affidavit also averred that, on November 12, two days after the deposition, he spoke to Dr. Benjamin over the phone "to inquire about his unexpected 'change' of opinion," at which point Dr. Benjamin "disclosed" the following: that Dr. Benjamin "suffers from *multiple myeloma*, a type of cancer"; that "[h]is condition and the medication he takes for the same, cause him confusion, memory issues, and fatigue"; that his deposition testimony "was inadvertent and directly caused by his medical condition and/or medication"; and, finally, that "[h]e is unable to continue serving as a witness in this case."

Barnes also filed Dr. Benjamin's report, the deposition transcript, and an email thread between counsel and Dr. Benjamin as exhibits to the motion.  The email exchange, dated November 12, contained counsel's recitation of many of the circumstances asserted in the affidavit, along with a request that Dr. Benjamin "[p]lease confirm the above."  Doctor Benjamin's reply stated that he had "been struggling with multiple myeloma, a type of blood cancer, for approximately [ten] years[,]" that this disease and related medications caused him to experience "lethargy, confusion and memory problems[,]" and that his symptoms had "not been

a problem to [his] work in the past, but recently * * * [had] intensified and caused [him] some problems with [his] memory."

In her memorandum of law in support of the motion, Barnes argued that the scheduling order should be modified because: (1) with no trial date set, there remained "ample time" for a new expert to be named and deposed; and (2) Dr. Benjamin's "inability" to proceed was both "unforeseeable" and "entirely out of [Barnes'] control." She based this argument on nonbinding Superior Court caselaw, as well as *Allen v. South County Hospital*, 945 A.2d 289 (R.I. 2008), *Bergeron v. Roszkowski*, 866 A.2d 1230 (R.I. 2005), and *Mills v. State Sales, Inc.*, 824 A.2d 461 (R.I. 2003), seemingly not for their holdings, but as examples of cases where, at some point in the procedural history, a trial justice allowed a party to replace an expert witness or add a new one. *See Allen*, 945 A.2d at 292 (trial justice conditionally vacated judgment of dismissal after the plaintiff secured replacement expert witness); *Bergeron*, 866 A.2d at 1233 (trial justice allowed the plaintiff to substitute expert witness, subject to conditions); *Mills*, 824 A.2d at 466 (trial justice allowed the plaintiff to add a new expert witness after scheduling order deadline had passed).

On January 4, 2022, Hodys filed an objection to Barnes' motion to modify the scheduling order. Hodys claimed that Barnes was trying to replace Dr. Benjamin not because he was medically unavailable, but rather "because his deposition

testimony was detrimental to her case." She vigorously disputed that Dr. Benjamin was unable to proceed as an expert, charging that there was "no credible medical evidence" supporting his unavailability. She asserted that Dr. Benjamin "continues to market his services as an expert on the internet" and that he "assuredly continues to serve as a consulting expert/expert witness in other cases." She provided neither exhibits nor more detailed factual allegations to substantiate Dr. Benjamin's purported continued online advertising or expert work. Hodys also contested that Dr. Benjamin's deposition testimony was influenced by a medical condition or medications, maintaining that any change in his opinion "was the product of effective cross-examination," specifically, confrontation "with the multitude of evidence of Ms. Barnes' drug use prior to the accident"—evidence that Hodys posited Dr. Benjamin was either "not provided" by Barnes or which he previously "chose not to consider." Hodys additionally observed that Dr. Benjamin's deposition testimony was consistent with her own pharmacology expert's opinion.

Hodys urged the hearing justice to reject Barnes' explanation for her request to replace Dr. Benjamin. She argued that it was "literally unbelievable" that Dr. Benjamin could have experienced "symptomology of the type described" to the extent that it would interfere with his testimony or ability to continue as an expert witness "without [his] ever disclosing the same to counsel, or counsel ever even noticing [Dr. Benjamin's symptoms] at any point during [their] numerous

communications." She described Barnes' counsel's sworn representation that he became aware of Dr. Benjamin's medical issues for the first time soon after Dr. Benjamin's deposition as "similarly lack[ing] credibility."

Hodys also posited that allowing Barnes to replace Dr. Benjamin would "unfairly prejudice" her, given that Dr. Benjamin's deposition was "highly successful" and produced testimony that "will be of critical assistance" to her case. She argued that Barnes should not be allowed to replace Dr. Benjamin "simply because his deposition testimony was detrimental to her case[,]" contending that such a decision "would mean that anytime an attorney successfully cross-examines an opposing party's expert witness, the opposing party can simply replace the compromised expert with a new one and start fresh with a clean slate and the added benefit of being well-versed in the attorney's mental impressions and case strategy."

Hodys sought to distinguish *Allen* and *Bergeron* by renewing her assertion that Dr. Benjamin was not truly medically unavailable and by characterizing the trial justices in those cases as having allowed replacement experts only subject to "several conditions." *See Allen*, 945 A.2d at 292; *Bergeron*, 866 A.2d at 1233. She commented that, while the expert witness in *Allen* unexpectedly "abandoned" the plaintiff's "litigious ship," justifying the subsequent vacation of a judgment of dismissal, Barnes was seeking "to throw [Dr. Benjamin] overboard because his

deposition testimony turned out to be detrimental to her case * * *." (Quoting *Allen*, 945 A.2d at 290.)

On January 5, 2022, the day after Hodys submitted her objection asserting that Dr. Benjamin was not truly medically unavailable, Barnes filed a statement signed by Dr. Benjamin, "subject to the pains and penalties of perjury," but not notarized. Doctor Benjamin's statement hewed closely to the content and language of Barnes' counsel's affidavit. Among other things, Dr. Benjamin averred both that his "inconsistent testimony was brought on by" his medical condition and the side effects of his medications and that he could not "at this time competently testify in [his] current medical condition."

The parties appeared before the hearing justice on January 13, 2022. At the hearing, Barnes and Hodys largely repeated their written arguments. Barnes claimed that "our courts are clear that if an expert cannot proceed, whether it's due to illness or even a refusal to testify, a replacement must be allowed." Barnes also emphasized that, without a modification to the scheduling order, she would be "left without an expert" on the issue of intoxication, which she characterized as "the issue of the case."

Hodys continued to deny that Dr. Benjamin's testimony was affected by his medical condition and that he was now unavailable to serve as an expert. She argued that Dr. Benjamin's behavior and demeanor in the deposition belied the assertion

that he was feeling the effects of any disabling symptoms or medication side effects. She also noted that Barnes had provided no evidence that Dr. Benjamin had ceased his other work as an expert witness or as faculty at Northeastern University. Hodys did not, however, submit any exhibits or provide any more detailed factual allegations to substantiate her claim that Dr. Benjamin continued to work as an expert witness.

Barnes responded that she would "understand" Hodys' argument if she "just didn't like the testimony that came out[,]" but directed the hearing justice to Dr. Benjamin's sworn statement, claiming that Dr. Benjamin "sinks his career by setting forth the facts" in that document.

The hearing justice then announced his decision, stating tersely: "I've heard the oral arguments of both parties in the case and I've read the documents. And based upon that, I'm [g]oing to deny the motion at this time." The corresponding order, entered January 21, 2022, charged that "the Scheduling Order shall not be modified and that [Barnes] is precluded from replacing her expert, David M. Benjamin, Ph. D[.], and/or disclosing any additional expert witness(es) in the field[s] of toxicology, pharmacology or other similar specialty." In another order entered on the same day, the hearing justice denied Hodys' motion to assign the case to the trial calendar.

Barnes filed a petition for a writ of certiorari on February 8, 2022. On June 9, 2022, Hodys again moved to assign the case to the trial calendar and to accelerate trial. Hodys' trial calendar assignment and acceleration requests were granted, over Barnes' objection, in separate orders entered on July 8, 2022. This Court granted Barnes' petition on November 29, 2022.

## II

### Standard of Review

"It is well settled that this Court's 'review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed.'" *State ex rel. Coventry Police Department v. Charlwood*, 224 A.3d 467, 469-70 (R.I. 2020) (quoting *Sandy Point Farms, Inc. v. Sandy Point Village, LLC*, 200 A.3d 659, 662 (R.I. 2019)). "When conducting such a review, this Court does not 'weigh the evidence on certiorari,' but rather, limits its review to 'questions of law raised in the petition.'" *Id.* (quoting *Sandy Point Farms, Inc.*, 200 A.3d at 662).

"This Court consistently has held that 'the Superior Court has broad discretion to regulate how and when discovery occurs.'" *Albanese v. Town of Narragansett*, 135 A.3d 1179, 1185 (R.I. 2016) (brackets omitted) (quoting *Shelter Harbor Conservation Society, Inc. v. Rogers*, 21 A.3d 337, 343 (R.I. 2011)). "We will not disturb a trial justice's decision relating to discovery save for an abuse of that discretion." *DiSano v. Argonaut Insurance Company*, 178 A.3d 982, 986 (R.I. 2018)

(brackets omitted) (quoting *Dawkins v. Siwicki*, 22 A.3d 1142, 1150 (R.I. 2011)). Furthermore, a discretionary ruling "will be sustained provided the discretion has been soundly and judicially exercised, that is, if it has been exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action, and not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law." *In re Mackenzie C.*, 877 A.2d 674, 684 (R.I. 2005) (deletion omitted) (quoting *Owens v. Silvia*, 838 A.2d 881, 890 (R.I. 2003)).

## III

### Discussion

We now consider whether the hearing justice erred in denying Barnes' request to modify the scheduling order so that she could replace her expert witness. Before this Court, Barnes argues that the hearing justice abused his discretion because: (1) replacement of the expert would not prejudice Hodys; (2) Barnes has a "meritorious explanation" for seeking to replace Dr. Benjamin, specifically his medical unavailability; (3) the decision on the motion "was devoid of any explanation or weighing of the parties' positions"; and (4) precluding a replacement expert on the "key issue" of intoxication would deprive Barnes of a fair trial.

Hodys counters that the hearing justice did not abuse his discretion, contending that he properly denied the motion after rejecting Barnes' contention that

Dr. Benjamin was medically unavailable. She posits that the hearing justice appropriately recognized that there was no meritorious explanation for replacing Dr. Benjamin and that allowing a replacement expert would have resulted in "substantial unfair prejudice" to Hodys.

As a preliminary matter, we note the arguments that we will not consider due to waiver. For the first time before this Court, Barnes asserts that Hodys' presentation of "uncontroverted expert testimony" regarding intoxication will deprive her of a fair trial by "inflaming" the jury and "distracting from the merits of the case * * *." Barnes did not raise any concerns about her right to a fair trial in her written or oral submissions to the hearing justice. "Accordingly, pursuant to one of our most well-established principles (the raise or waive rule), [this] argument[] will not be considered by us." *Decathlon Investments v. Medeiros*, 252 A.3d 268, 270 (R.I. 2021) (quoting *Pollard v. Acer Group*, 870 A.2d 429, 432 (R.I. 2005)).

Hodys' argument concerning Rule 40(c) of the Superior Court Rules of Civil Procedure is similarly waived. Rule 40(c) requires that "[a] motion for a continuance on the ground of sickness of a party or witness shall be accompanied by a certificate of a practicing physician stating the fact of said sickness, and the kind, degree, and the time of beginning thereof." Super. R. Civ. P. 40(c). Hodys draws our attention to this rule, commenting that it "provides at least some mechanism for verifying and supporting [a] claim for medical unavailability" beyond a witness's

"self-proclamation." Given that this issue was never presented to the hearing justice, we will not consider it here. *See Decathlon Investments*, 252 A.3d at 270.

We will also only briefly address *Mills* and *Bergeron*, which Barnes brings forward apparently as examples of cases where a trial justice allowed an expert to be replaced; *Mills* and *Bergeron* concern, in relevant part, a trial justice's decision to grant or deny a trial continuance. *See Mills*, 824 A.2d at 469-70 (finding no abuse of discretion in denying a motion for a continuance, where denial of a continuance did not present an insurmountable bar to the plaintiff's success); *Bergeron*, 866 A.2d at 1236 (same). In the case at bar, the motion at issue did not request a trial or hearing continuance, and the case had not progressed to the trial calendar. We will not further discuss these procedurally inapposite cases.

Our task at hand on a writ of certiorari is to scour the record to determine if an error of law has been committed. *See Noonan v. Sambandam*, 296 A.3d 670, 673 (R.I. 2023). We need not tarry long; the error lies in the very brevity of the hearing justice's decision. The parties do not contest, nor could they, that the hearing justice failed to provide any rationale for his decision on the record. Barnes argues that this lack of explanation constitutes an abuse of discretion, which Hodys disputes. Among other arguments, Hodys suggests that we should not find an abuse of discretion because busy hearing justices often grant or deny requests from parties in this summary fashion.

- 16 -

We have previously cautioned, however, that a trial justice errs when she "provide[s] no reasoning as to her decision." *See Noonan*, 296 A.3d at 674 ("[T]he trial justice provided no reasoning as to her decision. This was error."); *see also Fisher v. Lau*, 291 A.3d 1261, 1262 (R.I. 2023) (mem.) (remanding, explaining that "[t]he trial justice's decision * * * [was] devoid of any meaningful analysis" and that "our examination of the record and decision [was] hampered by this vacuum"); *Fitzpatrick v. Pare*, 552 A.2d 1185, 1186 (R.I. 1989) (remanding, holding that the Court was "unable to reach the merits of the petitioner's contentions" because the "District Court's decision * * * [was] devoid of any supportive reasoning" and therefore "intelligent appellate review [was] impossible").

Given that we have no way to discern how the hearing justice came to his decision, we cannot say that his discretion was "exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action * * *." *In re Mackenzie C.*, 877 A.2d at 684. We cannot find a reasoned exercise of discretion without some hint as to how that discretion was exercised.

Additionally, we have previously expressed our preference for a more comprehensive record of a trial justice's rationale where the decision will have a clear and significant preclusive effect. In *BHG, Inc. v. F.A.F., Inc.*, 784 A.2d 884 (R.I. 2001), we faulted a trial justice's cursory, one-line decision granting a motion *in limine* that effected a *de facto* motion for summary judgment. *BHG, Inc.*, 784 A.2d

- 17 -

at 887. There, we advised that the "better practice" when deciding an ostensibly nondispositive motion with "a potentially preclusive effect of this magnitude would have been for the trial justice to have carefully set forth the reasons for her order * * *." *Id.* at 887-88. Given the apparent and substantial preclusive effect of prohibiting Barnes from replacing Dr. Benjamin or disclosing any additional experts in related fields, there was cause for the hearing justice to exercise greater care in laying out the rationale for his decision.

Hodys maintains that there is enough in the record for us to both discern how the hearing justice exercised his discretion and to determine that he did so properly. She asks us to assume that, simply because the hearing justice denied Barnes' motion, and despite the lack of any supporting language in his decision, the hearing justice must have "rejected" Barnes' representation that Dr. Benjamin was medically unavailable. Hodys also invites us to suppose that the hearing justice based this purported rejection on a lack of evidence of Dr. Benjamin's medical condition, the fact that Barnes asked to replace Dr. Benjamin shortly after his deposition, and what Hodys characterizes as "the obvious fact" that Dr. Benjamin continues to work as an expert in other cases. We decline to draw such conclusions from a silent record.

If the hearing justice indeed founded his denial of the motion on a belief that counsel sought to deceive him in an affidavit and a sworn statement, in violation of counsel's duty of candor toward the tribunal, we would expect such a finding to

appear on the record. *See* Article V, Rule 3.3 of the Supreme Court Rules of Appellate Procedure ("Candor toward the tribunal."). "The Rules of Professional Conduct are in place not solely to protect individual clients but also to protect the integrity of the judicial system itself." *In re McKenna*, 110 A.3d 1126, 1150 (R.I. 2015).

We are particularly disinclined to assume that the hearing justice based his decision on a rejection of Dr. Benjamin's unavailability given the evidence that was before him. Hodys did not provide the hearing justice with any exhibits to substantiate her claims about Dr. Benjamin's availability. She also did not disclose a factual basis for her allegations, beyond an account of Dr. Benjamin's conduct at the deposition and a bare assertion that Dr. Benjamin "continues to market his services as an expert on the internet * * *." Indeed, many of her arguments on this point were openly speculative, e.g.: "I can all but guarantee that if I called Dr. Benjamin today and asked him to serve as a consulting expert on a case and was willing to stroke him a retainer check, he would absolutely take on the case." The evidence before the hearing justice on this issue thus amounted to the affidavit of Barnes' counsel and the statement of Dr. Benjamin, both of which attested to Dr. Benjamin's unavailability. For the first time before this Court, Hodys provides screenshots of Dr. Benjamin's website in an appendix to her briefing. This evidence was not presented to the hearing justice and is not part of the record on appeal. We

shall not consider it here. *See, e.g.*, *Hagopian v. Hagopian*, 960 A.2d 250, 254 (R.I. 2008) (declining to consider evidence not presented to the trial justice).

The hearing justice's decision was devoid of analysis and does not allow us to discern the facts relied upon in reaching that decision.  Thus, review by this Court is premature. *See Fisher*, 291 A.3d at 1262.

## IV

## Conclusion

For the reasons stated herein, we quash the order of the Superior Court denying Barnes' motion to modify the scheduling order and precluding her from replacing her expert witness and/or disclosing any additional expert witnesses.  We further remand to the Superior Court with instructions to conduct a meaningful analysis of the issues raised, consistent with this opinion.  The hearing justice may, in the exercise of his sound discretion, rely on the existing record or accept additional evidence.

Justice Lynch Prata and Justice Long did not participate.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Lauren Barnes v. Nancy Hodys. Nancy Hodys et al. v. Lauren Barnes. |
| **Case Number** | No. 2022-43-M.P. (PC 16-2181) No. 2022-44-M.P. (PC 17-5776) |
| **Date Opinion Filed** | January 23, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice R. David Cruise |
| **Attorney(s) on Appeal** | For Plaintiff/Defendant: Robert E. Craven, Esq. For Defendant/Plaintiff: Mark P. Dolan, Jr., Esq. |